UNITED STATES

v.

Mark Anthony WILLIAMSON, 184 48
2151, Seaman Recruit E–1,
U.S. Navy.

NCM 77 1803.

U. S. Navy Court of Military Review.

Sentence Adjudged 2 Dec. 1976.

Decided 21 Dec. 1977.

CDR Carl H. Horst, JAGC, USN, Appellate Defense Counsel.

CAPT Geoffrey D. Fallon, USMCR, Appellate Government Counsel.

Before DUNBAR, BAUM and MALLERY, JJ.

BAUM, Judge:

Appellant stands convicted of a 2 year unauthorized absence after pleading guilty pursuant to a pretrial agreement. He was sentenced by a special court-martial judge to a bad conduct discharge, confinement at hard labor for 3 months, and forfeiture of $100.00 per month for 3 months. The convening authority reduced the confinement

to 75 days, in accordance with the pretrial agreement, and otherwise approved the sentence. At this level, appellant, citing *United States v. Green*, 24 U.S.C.M.A. 299, 52 C.M.R. 10, 1 M.J. 453 (1976) and *United States v. Elmore*, 24 U.S.C.M.A. 81, 51 C.M.R. 254, 1 M.J. 262 (1976), summarily assigns as error that his pleas of guilty were rendered improvident because of the military judge's failure to properly and sufficiently inquire into the terms of the pretrial agreement. He has not specified wherein the inquiry is deficient, nor does he assert that he was misled, or that the convening authority failed to comply with the agreement.

The military judge established that appellant understood all provisions of his pretrial agreement, including the sentence limitations. (R. 10, 19, 20). In addition, the military judge received assurances from trial counsel and defense counsel that the written agreement encompassed all of the understandings of the parties. (R. 11). The military judge did not specifically ask trial counsel and defense counsel if their interpretation of the pretrial agreement agreed with his own. The pretrial agreement in this case, however, is clear and unambiguous. Since neither counsel objected to the military judge's interpretation of the pretrial agreement, after hearing the judge's discussion of the agreement with appellant, we conclude that their understanding of the meaning and effect of the plea bargain necessarily comported with that of the military judge. We find that the military judge's inquiry fulfilled the requirements of *United States v. Green, supra,* and that appellant's guilty pleas were voluntarily and providently made.

The instant pretrial agreement inquiry leaves us with no gap in the record; in contrast with the situation in *United States v. King*, 3 M.J. 458 (C.M.A.1977), where the military judge failed to ask for and obtain from both counsel confirmation that the written agreement encompassed all of the understandings of the parties. In such a case, silence would not assure that there were no *sub rosa* understandings, and a majority of the Court of Military Appeals declined to "fill in" a record left silent in this regard, and reversed. Those judges have made it clear that cases reaching them with such a gap will be reversed without regard to its prejudicial effect. In our view, however, the *King* decision does not deprive this Court or lower reviewing authorities of the right to obtain additional information, either through affidavits or an appropriate hearing,[1] in order to meet our fact finding responsibilities and, thus, fill in asserted procedural gaps when actual prejudice has not been alleged. To interpret *King* otherwise would result in our being forced, contrary to Article 59(*a*, UCMJ, 10 U.S.C. § 859(a), to mechanistically reverse even those cases in which the failure to follow the *Elmore* guidelines constitutes quintessentially harmless error. I do not believe the Court of Military Appeals intended to require such of this Court or of convening and supervisory authorities. If so, I would have to concur with the views expressed by Senior Judge Dunbar, in his separate opinion, concerning the inappropriateness of appellate fiats that impose rigid restraints upon the exercise of judicial judgement and discretion at the trial and intermediate review levels. High Court decisions should not mandate reversal of cases for departures from procedural norms not involving considerations of constitutional due process, or material prejudice to a substantial right. To do so elevates form over substance and, thus, conflicts with our basic principles of criminal law as well as with the Uniform Code of Military Justice.

I disagree, however, with Senior Judge Dunbar's analysis that finds case language still precatory after *Green.* As I read *Green,* the following language from that case makes the suggested guidelines in the concurring opinion of *United States v. Elmore, supra,* a mandatory procedure, rather than a permissive one:

> We, therefore, hold that as part of all *Care* inquiries conducted 30 days or more after the date of this opinion, the trial

1. Article 62(*b*), UCMJ; Paragraph 95, MCM, 1969 (Rev.).

judge *shall* ascertain whether a plea bargain exists and, if so, *shall* conduct an inquiry into the pretrial agreement in accordance with the *Elmore* guidelines previously enunciated. [Emphasis supplied] [*United States v. Green, supra* at 302, 52 C.M.R. at 13, 1 M.J. at 456].

As stated earlier, however, I find that the *Green* mandate was met in this case.

 Since the *Elmore* concurring opinion merely sets forth results to be obtained by trial judges, without spelling out the precise manner in which they will be achieved, I believe it incumbent upon this Court to immediately set forth procedures to be followed. Accordingly, in order to minimize further reversals at the highest level, henceforth, the Military Judge should conduct each pretrial agreement inquiry in accordance with the following procedure:

1. Ask the accused and his counsel if there is a pretrial agreement.
2. If there is an agreement, then view it in its entirety before findings when trial is before a court composed of members; otherwise, reserve inquiry into the sentence provisions until after imposition of sentence.
3. Go over each provision of the agreement with the accused (including, at the appropriate point in the proceedings, the sentence terms), paraphrase each in the judge's own words, and explain in the judge's own words the ramifications of each provision.
4. Obtain from the accused either his statement of concurrence with the judge's explanation or his own understanding, followed by a resolution on the record of any differences.
5. Strike all provisions, with the consent of the parties, that violate either appellate case law, public policy, or the judge's own notions of fundamental fairness; further, make a statement on the record that the judge considers all remaining provisions to be in accord with appellate case law, not against public policy, and not contrary to his own notions of fundamental fairness.
6. Ask trial and defense counsel if the written agreement encompasses all of the understandings of the parties, and conduct further inquiry into any additional understandings that are revealed.
7. Ask trial and defense counsel if the judge's interpretation of the agreement comports with their understanding of the meaning and effect of the plea bargain, and resolve on the record any differences.

Convening and supervisory authorities should return all records to the judge for compliance with this procedure when their review reveals that it has not been followed and such can be done without material prejudice to the substantial rights of the accused. *See* Article 62(*b*) UCMJ; Paragraphs 80, 86*d*, and 95, MCM, 1969 (Rev.); *United States v. Barnes,* 21 U.S.C.M.A. 169, 44 C.M.R. 223 (1972); *United States v. Berkley,* 47 C.M.R. 30 (N.C.M.R.1973). Return of the record will ensure correction of defects at the earliest possible time, expedite the appeal process and conserve both time and resources.[2]

The appellant's second assignment of error relates to a purported defect in the sworn charges that we have addressed and rejected before and is again rejected here.

The findings of guilty and sentence as approved below are affirmed.

Judge MALLERY concurs.

DUNBAR, Senior Judge (concurring in the result):

I concur in the result reached by the majority opinion. I disagree with and disassociate myself from the reasoning contained therein. That reasoning eludes salient issues, will, in all probability, prove ineffectual as far as accomplishing the pur-

---

**2.** *See United States v. Crowley,* 3 M.J. 988, 993 n. 7 (A.C.M.R.1977) with respect to our responsibilities in this regard.

pose for which it is intended,[1] and fails to come forcefully to grips with the more significant implications[2] and problems posed by the cases under discussion.

In *United States v. King, supra,* the United States Court of Military Appeals reiterated guidelines set forth in *United States v. Elmore, supra* at 82–83, 51 C.M.R. at 255–256, 1 M.J. at 263, 264 (Fletcher, C. J., concurring) and adopted in *United States v. Green, supra.* Simply put, those guidelines state that: (a) the military judge *must* insure on the record that the accused understands the meaning and effect of each condition of the pretrial agreement as well as the sentence limitations contained therein; (b) if any section of the pretrial agreement violates case law, public policy, or the trial judge's own notions of fundamental fairness, the trial judge should, with concurrence of counsel, strike that section on his own motion; and (c) the trial judge *should* (I emphasize, "*should*"; but more on that, *infra,* this opinion) secure the assurance of trial and defense counsel that the pretrial agreement encompasses all the agreements of the parties and that all parties similarly interpret and have the same understanding regarding the agreement.

In this particular case, the trial judge did not specifically ask trial and defense counsel whether they agreed with his interpreta-

tion of the pretrial agreement; otherwise, each of the foregoing guidelines appears to have been complied with.

Thus, the question arises: Must this Court set aside the findings and sentence on the sole basis that the military judge failed to comply with one aspect of the specific guidelines precipitated by *Elmore* and *Green*? A literal reading of *King* might lead one to conclude that that answer must be "yes."[3] However, overturning these cases on the hypothesis that *King* is the final statement in this matter will result in many wrongdoers escaping the consequences of their misdeeds as well as considerable expense to the Government if we should conclude that new trials are required. I would reject such a hypothesis on the basis that it proceeds on the premise that our personal insight into the implications of a literal reading of *King* is unnecessary and plays no role in the fulfillment of our inherent and statutory judicial responsibilities.

At this time, we are confronted with a number of cases which do not fit clearly within the framework of the principles enunciated in *Elmore* and *Green.* The simplest course of action this Court could now pursue would be to inflexibly apply those principles, set aside the findings and sen-

---

1. The majority opinion seems to assert that *Green* was a clear mandate at the time of its publication, and then proceeds to misinterpret it. In *Green* at 302, 52 C.M.R. at 13, 1 M.J. at 456, the High Court said, "We will view a failure to conduct a plea bargain inquiry as a matter affecting *the providence of the accused's plea . . . .*" Consequently, if the complete inquiry as purportedly required by the *Green* mandate is not conducted, then the plea, in the High Court's own words, is improvident. An improvident plea goes to the heart of the trial proceedings. It cannot be made over by affidavits, inferences, or "fill ins" by either the High Court or any other court; unless, the High Court views its "mandate" as communicatively defective and agrees to make it effective only after *King.* The majority does not seem to comprehend the true significance of *Green* as finally clarified and finalized in *King. King* states that if the military judge does not conduct the prescribed inquiry, the plea is improvident *as a matter of law* and that substantial compliance with the mandate by "fill ins" is unacceptable. Those

who believe that an improvident plea can be cleaned up or regenerated by affidavits, inferences, or "fill ins" are merely indulging in wish fancy and compounding an already difficult and complicated situation; i. e., what disposition to make of the many cases now pending, wherein the specific technical requirements of *Green* have not been complied with. Moreover, if the corrective action being set in motion by the majority is untenable, then this matter becomes even more complex and confused.

2. Many of these implications are easily inferable from a speech delivered by the seasoned Chief Judge of the High Court to Army, Navy, Marine, Air Force, and Coast Guard judge advocates at the Marine Corps Base, Quantico, Virginia, on 5 November 1977.

3. In this connection, it is noted that this is one of a growing number of similar cases pending before us where the military judge has, from all appearances, unintentionally failed to adhere precisely to those guidelines.

tences, and return the cases for rehearing on the ground that such action is required by law; i. e., *King*. I doubt that such a course could be criticized as technically incorrect. Few persons would challenge the fact that we had discovered, copied correctly, and proclaimed without error the decisions of the Higher Court in this particular area.

Yet, in my opinion, those advocating unreasonably strict application of legal rules in the disposition of court-martial cases are advocating a type of narrow efficiency and utility inimical to the proper administration of justice. Such a practice robs the military appellate courts of the opportunity to apply prior practical and judicial experience and to exercise normal legal subtlety and reasoning, in reaching an intelligent solution to specific problems under consideration. Attempts to overly program and systematize judicial thought processes into a body of unreasonably inflexible and fastidious legal rules, regulations, and procedural requirements might very well succeed in emasculating our military criminal justice system of all its philosophical and substantive content.

Although I cannot, I would prefer to interpret the pronouncements in *Elmore, Green* and *King*, as mere leading guidelines: In this and similar cases, their function should be to disclose the beliefs and desires of the Court of Military Appeals with regard to pretrial agreements and their relationship to the providency of pleas, and to steer the appellate courts in accordance with the higher Court's policies. Such pronouncements should be considered as instruments, not ends in themselves, and should be applied according to the specific demands of a particular situation; perhaps in some instances, they may not be applicable at all. For example, I can envision circumstances where the procedural mandates of *King* are not followed and, yet, testimony in the record would nevertheless convince this Court beyond any reasonable doubt that the pretrial agreement was legally valid and the plea provident. In such instances, it seems that precedent, so-called controlling decisions, established procedure,

etc., must give way to rationality and reasonableness; and, that issues regarding a failure to strictly adhere to the letter of a rule of procedure can be mooted by the realization of the very goal which that rule was designed to achieve.

Of course there may be situations or circumstances where this Court senses and determines that the type of criteria contained in *Elmore, Green* and *King*, may be vital and should have been stringently applied by the military judge. But, I think such determinations should be within the discretion and authority of the intermediate appellate courts; unless, clearly contrary to Congressional intent, these bodies are to become mere bureaucratic agencies whose function it is to mechanistically apply made-in-advance conclusions gleaned from prior military case law.

With regard to the instant case, appellant makes a summary assignment of error asserting simply that *United States v. Green, supra*, was not complied with. The legal inference is unmistakable: the military judge failed to act in accordance with the *Elmore-Green-King* formula previously passed down; the findings and sentence must, therefore, be set aside; hence, this Court's duty is clear. All is conveniently pre-arranged, and a neatly ordered little system of rules guides us to the correct conclusion in this matter. Furthermore, return of this and similar records of trial will exact judicial discipline upon both the trial judges and the Government for negligent failure to insure that the formula was correctly administered.

In all fairness, can it not be reasonably asserted that there is something pinched down, overly reactive, and pedagogic (a rapping of the knuckles so to speak) in such an approach to legal problem solving? Why must the military judge embark upon an intensive and ritualistic search for affirmative wrongdoing on the part of the convening authority and trial and defense counsel? Can it not be argued also that this procedure casts the military judge in a rather demeaning and adolescently suspicious role?

On the other hand, I think that, psychologically speaking, there has always been a tendency on the part of some people to believe that particular words intoned in a certain prescribed manner by properly authorized persons can produce unusual or even extraordinary effects. A sort of hankering for or after magical results. But where the progress and development of a criminal justice system is concerned, there seems to be something regressive about all of this. I say this with all due respect to those of a contrary opinion, because I believe the facts here must be stated in all their bold harshness, and we at the appellate level must grapple candidly with them to arrive at the more correct and reasonable solution to the problems posed.

In this case, I believe the rightness or wrongness of the applicability of the *Elmore, Green*, and *King* criteria is not the real issue. The vital issue, in my opinion, is whether the doctrine espoused in *Green* was a *clear* mandate by the Court of Military Appeals to the military judges, *in every respect*. I feel we must admit that it was not, and that the very existence of a large number of widespread cases pivoting on the same issue is illustrative of such a conclusion.

To categorize *Green* as clearly mandating the military judge to query both trial and defense counsel as to whether the written agreement encompasses all understandings of the parties and whether all parties similarly interpret the agreement is simply not being honest with the naked facts. *Green*, in quoting from the concurring opinion in *Elmore*, explicitly and unequivocally states that the military judge "should" thus query counsel. It cannot be denied that the exposition in this respect is weak, loose, and inexact for the purpose it was ostensibly intended. If this language was intended to be mandatory, there is absolutely no reason why the decision could not have read, "the trial judge must," or "henceforth it is required," or the "trial judge shall." On the contrary, the language in *Green* is quite clear and unambiguous as far as the accused is concerned. Therein it states the trial judge "must" shoulder the primary

responsibility for assuring on the record that an accused understands the meaning and effect of each condition as well as the sentence limitations imposed by any existing pretrial agreement. But frankly, even *King* refrains from actually using mandatory language. Examined carefully, it will be observed that the clear mandate in *King* is sneaked in from behind the scenes created by *Elmore* and *Green*. Thus, the use in *King* of such terminology as, ". . . the military judge failed to secure . . .," and "Hence, it is clear that the mandate of *Green* . . . ." But, realistically speaking, I think use of mandatory language in *King* would have been in stark contrast and contradiction to the permissive terminology in *Green* and, therefore, would too obviously have raised the question as to why mandatory language was not used in the earlier cases.

Of course, this is mere speculation. But I cannot imagine any court being able to honestly take the position that the word "should" constitutes mandatory legal verbiage; else, how could all of this world-wide hassle and confusion have arisen. Finally, by what wild stretch of the imagination can it be asserted that *Green* was a clear mandate when competent Navy defense counsel at the appellate level failed to recognize this particular matter in issue as an obvious assignment of error, until publication of *King*? *Green* was not a clear, forceful, positive mandate. The confusion now existing testifies to this fact. The majority opinion cites one paragraph from *Green* as evidence that the language in that decision was a mandate. But that paragraph must be read in context with two other paragraphs in the decision. One of those paragraphs uses mandatory language, the other uses permissive. I am merely saying that the decision was subject to possible *misinterpretation*.

Consequently, I do not consider it fair or proper to hold the military judges, prior to *King*, to specific courtroom standards where the absolute necessity for those standards has not been expounded in clear, accurate, and precise judicial language. The

**714**

distinction between mandatory and permissive terminology in legal writing is elementary and need not be elaborated upon at this time. Indeed, I would suggest that it is generally not good practice for the High Court to transform a concurring opinion, as in *Elmore*, into a majority opinion, as in *Green*, without first insuring that the former is conducive to such a transformation under circumstances where dissemination of a military-wide legal message, involving complicated future procedural requirements, is intended.

In view of the foregoing, I would, therefore, pursue the following action in an effort to shore-up the chaos pouring in on us with the expectation that the High Court would accept this as the more correct and reasonable solution to the present difficulties.[4] I would exercise judicial insight and discrimination in determining whether to affirm those cases, tried prior to *King* (1977), where the military judge did, from all appearances, conduct an adequate inquiry into the providency of the pretrial agreement; yet, failed to technically abide by each and every one of the principles of the higher Court in *Green* to the effect that the military judge *"should"* secure assurance of trial and defense counsel that the pretrial agreement encompasses all the agreements and that all parties similarly interpret the agreement, and that he *"should"*, on his own, strike unfair provisions, etc. In cases tried immediately following *King*, I would use discretion to determine whether the military judge had reasonable time to become aware of the principles finally tidied up into a clear mandate by *King*. Additionally, I would request the Judge Advocate General to once again insure that the technical require-

ments of *King* are effectively promulgated to all members of the trial judiciary for compliance. I do not agree with the action of the majority in disseminating further guidelines of trial procedure before the smoke, dust, and debris aroused by this present controversy have subsided. This is an administrative matter extending to trial guides, procedures, etc., and one which might even require coordination. The majority has already stated that the mandate in *Green* is clear. Therefore, why additional guidelines?

---

4. In the text of a speech entitled, "Where the Court of Military Appeals is Going in the COMA Evolution," Chief Judge Fletcher, states that:

> The Court [of Military Appeals] avoids hard and fast procedural implementation of its opinions applicable to all branches of the services—believing as we do that there are differences in the branches and the fine tuning is best done by the individual services. We do not believe that ignoring our decisions

or attempting circumventions of our decision is fine tuning.

Consistent with these sentiments, my view in this case constitutes a deliberate effort to "fine tune" the *Elmore-Green-King* trilogy and to thereby effectively avoid the immediate "hard and fast procedural implementation" of a series of opinions from the High Court which that body could hardly deny has managed to unintentionally mislead those who it sought to guide.