## UNITED STATES

v.

**Dean HOAGLIN, 571 96 8504, Lance Corporal (E–3), U. S. Marine Corps.**

**NCM 80 0897.**

U. S. Navy Court of Military Review.

Sentence Adjudged 3 Jan. 1980.

Decided 27 Feb. 1981.

CAPT E. A. Burnette, USMC, Appellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate Government Counsel.

LT William C. Martucci, JAGC, USNR, Appellate Government Counsel.

EN BANC.

BAUM, Senior Judge:

Appellant pled guilty pursuant to a pretrial agreement. Now, after conviction, sentencing and mitigation of the sentence by the convening authority through suspension of the bad-conduct discharge in accordance with the terms of the plea bargain, appellant asserts that the military judge erred by failing to satisfy himself that his understanding of each provision of the agreement was the same as appellant's. In support of this assignment, appellant cites *United States v. Green*, 1 MJ 453 (CMA 1976); *United States v. King*, 3 MJ 458 (CMA 1977); and *United States v. Williamson*, 4 MJ 708 (NCMR 1977). From these cases, he urges that this Court set aside the findings and sentence. Appellant does not assert prejudice nor does he contend that he was misled, that he misunderstood any provision, or that his understanding of the terms of the agreement was different from that expressed by the judge. The sole apparent basis for appellant's request that the findings and sentence be set aside is the judge's failure to follow the guideline for conducting a plea bargain inquiry as set forth in *United States v. Williamson, supra*, which thus, presumably, results in a failure to comply with the mandate of *United States v. Green* and *United States v. King*, both *supra*.

In *United States v. Green*, the Court of Military Appeals made it mandatory that all trial judges ascertain whether a plea bargain exists and, if so, to conduct an inquiry into that agreement in accordance with the following guideline previously set forth in *United States v. Elmore* [1]:

[T]he trial judge must shoulder the primary responsibility for assuring on the record that an accused understands the meaning and effect of each condition as well as the sentence limitations imposed by any existing pretrial agreement. Where the plea bargain encompasses conditions which the trial judge believes violate either appellate case law, public policy, or the trial judge's own notion of fundamental fairness, he should, on his

own motion, strike such provisions from the agreement with the consent of the parties.

In addition to his inquiry with the accused, the trial judge should secure from counsel for the accused as well as the prosecutor their assurance that the written agreement encompasses all of the understandings of the parties and that the judge's interpretation of the agreement comports with their understanding of the meaning and effect of the plea bargain.

In *United States v. Williamson, supra*, we set forth the following steps to be taken by judges to comply with *Green* :

1. Ask the accused and his counsel if there is a pretrial agreement.

2. If there is an agreement, then view it in its entirety before findings when trial is before a court composed of members; otherwise, reserve inquiry into the sentence provisions until after imposition of sentence.

3. Go over each provision of the agreement with the accused (including, at the appropriate point in the proceedings, the sentence terms), paraphrase each in the judge's own words, and explain in the judge's own words the ramifications of each provision.

4. Obtain from the accused either his statement of concurrence with the judge's explanation or his own understanding, followed by a resolution on the record of any differences.

5. Strike all provisions, with the consent of the parties, that violate either appellate case law, public policy, or the judge's own notions of fundamental fairness; further, make a statement on the record that the judge considers all remaining provisions to be in accord with appellate case law, not against public policy, and not contrary to his own notions of fundamental fairness.

6. Ask trial and defense counsel if the written agreement encompasses all of

---

1. *United States v. Elmore*, 1 MJ 262, 264 (1976) (Fletcher, C. J., concurring).

the understandings of the parties, and conduct further inquiry into any additional understandings that are revealed.

7. Ask trial and defense counsel if the judge's interpretation of the agreement comports with their understanding of the meaning and effect of the plea bargain, and resolve on the record any differences.[2]

■ The judge in this case did not follow the procedure set forth in *United States v. Williamson.* Specifically, he neglected to comply with steps 3, 4 and 5 of the *Williamson* guideline. The judge did follow steps 6 and 7, however, by obtaining from both counsel their acknowledgment that the written agreement encompassed all of the understandings of the parties and that the judge's interpretation of the agreement comported with their understanding of the meaning and effect of the plea bargain. Moreover, while not going over with appellant all 12 of the agreement's paragraphs, outside of the sentence terms, the judge did explain some provisions as well as the sentence limitations. In addition, the judge asked the accused if he had read and discussed each provision with counsel and whether he believed he understood them all. Certainly, this is not the way we envisioned that judges would approach the plea bargain inquiry and it clearly does not comport with our recommended procedure in *Williamson*; however, we cannot say, under the circumstances of this case when there is no indication at trial, or after, that appellant harbored any misunderstanding, that by using this method the judge has failed to assure himself that the accused understood the meaning and effect of each condition. Literally, the judge has complied with *United States v. Green.* Accordingly, while we do not approve of the practice utilized by this judge because it leaves open the real possibility that there may be a latent misunderstanding which will surface only after trial, we find no such misunderstanding here and, therefore, reject appellant's assignment of error.

■ The issues raised in this particular case are thus resolved, but we are concerned by the fact that some judges have chosen not to follow the procedure outlined in *Williamson* for conducting plea bargain inquiries. If that procedure had been followed in the instant case, we would not have been confronted with the assignment of error that was raised here and the possibility that the accused misunderstood a provision of the agreement not explained to him by the judge. Although the assignment has been rejected in this case, judges who fail to follow *Williamson* should be aware that whenever they take such a course they are placing the findings and sentence in jeopardy. It has been three years since the *Williamson* decision was promulgated, and the time has long since passed for judges to be taking short cuts that depart from *Williamson*, particularly with respect to explaining the pretrial agreement in its entirety. Apparently, some judges have consciously chosen to ignore the *Williamson* steps because the language used in that opinion was precatory rather than mandatory. In order to lay to rest any doubts on this question and to make matters crystal clear, for trials commencing 60 days after the date of this opinion it will be obligatory for all military judges to follow the seven step procedure outlined in *Williamson*. Failure to follow that procedure will be error that may well result in a prejudicial misunderstanding and thus reversal.

As a further word of caution, trial judges should remember the admonition expressed in *United States v. Kraffa*, 9 MJ 643, 644–645 (NCMR 1980):

Rote compliance with these seven procedures, however, is of no value if the underlying responsibility of the judge to assure that the accused understands the meaning and effect of the agreement is not carried out. The judge must enter into a meaningful dialogue with the accused, explaining the effect of existing law on the terms and conditions of the

---

2. *United States v. Williamson*, 4 MJ at 710.

agreement, and establishing on the record a complete understanding between all parties to the trial, including the military judge, as to the meaning and effect of these terms and conditions.

Furthermore, despite what appear to be unnecessary provisions in many of the written plea bargains utilized today, for the most part they follow the format recommended by the Judge Advocate General of the Navy in the *Manual of the Judge Advocate General*, sections 0114b(1) and (2). Presumably, these provisions would not be included in the agreement if they were not at one time considered important to the bargain and to the parties' understanding. Accordingly, it is essential that the judge explain his understanding and obtain the parties' understandings of *all* provisions. Even those that restate rules of law must be explained for they can be critical to the accused's understanding of his rights with regard to the agreement and thereby critical also to his full understanding with respect to his pleas. It must be remembered that the objective is to ensure that the accused knows fully what his rights are and what he is giving up when he pleads guilty in return for certain promises by the convening authority. As stated in *United States v. Green, supra* at 456, "a plea bargain inquiry is essential to satisfy the statutory mandate that a guilty plea not be accepted unless the trial judge first determines that it has been voluntarily and providently made."

As noted earlier, we find that the inquiry requirements of *United States v. Green* were satisfied in this case. Accordingly, the findings and sentence as approved below are affirmed.

Chief Judge CEDARBURG, Senior Judge GREGORY, and Judges PRICE, SANDERS, ABERNATHY, KERCHEVAL and GLADIS concur.

1. *United States v. Moglia*, 3 MJ 216, 218 (CMA 1977); Article 45, Uniform Code of Military Justice, (UCMJ).

2. *United States v. Donohew*, 18 USCMA 149, 39 CMR 149 (1969); Article 38(b), UCMJ, 10 U.S.C. § 838(b); U.S.Const. amend. VI.

EDWARDS, Judge (concurring):

The failure of military judges to heed the excellent advice in *United States v. Williamson*, 4 MJ 708 (NCMR 1977), comes home to roost not in the normal case in which the conditions set out in the pretrial agreement are met without difficulty, but in those cases in which there is a failure to meet a condition, or in which there is an effort by one of the parties to abrogate the agreement. This failure by the judge to carry out the mandate of *United States v. Green*, 1 MJ 453 (CMA 1976), cannot be cured by cajolement or edict from the bench.

Cure will come from an understanding by military judges of two things; initially, of the role of the military judge in acceptance of a guilty plea, and secondly, of the purpose of the inquiry into the provisions of the pretrial agreement.

As to the first, the military judge should be aware that because the trial almost completely loses its adversary character upon entry of a guilty plea, the judge is burdened with the dual responsibilities of determining whether the fundamental rights of the accused are being protected and concomitantly of protecting the court's proceedings against future false or spurious claims. In doing so, we know that first and foremost the plea must be substantiated in fact.[1] We know also that certain fundamental rights must become a matter of judicial concern and, because of the strong presumption against waiver of constitutional or military due process rights, a diligent judicial inquiry must be made of the accused's rights to assistance of counsel,[2] to trial by court of members,[3] against self incrimination,[4] and not to be deprived of life or liberty without due process of law.[5]

3. Articles 16 and 25, UCMJ, 10 U.S.C. §§ 816 and 825.

4. Article 31, UCMJ; U.S.Const. amend. V.

5. U.S.Const. amend. XIV.

In carrying out these responsibilities the military judge must satisfy himself, by a penetrating and comprehensive examination of all the circumstances under which the guilty plea was tendered, that the plea was intelligently, understandingly, voluntarily and competently made, and that the record so reflects.[6] The military judge must explain these rights, not depending on counsel to explain them to the accused, for without knowledge of his rights the accused cannot intelligently and competently waive them. The inquiry, perforce, must determine that the plea was not induced by threats, misrepresentations, coercion or the holding out of false hopes; otherwise its voluntariness cannot be determined. The voluminous amounts of litigation and opinions written on the subject of guilty pleas should in themselves place the astute military judge on notice that the record must be sufficient to (1) establish the care with which the constitutional rights of the accused were safeguarded and (2) preclude post-trial assertions that a defendant's rights were denied him.

In those cases in which the guilty plea is memorialized in a pretrial agreement the military judge has an even heavier responsibility to inquire into the facts and circumstances surrounding the plea, for there is then more potential for a lack of voluntariness and misunderstanding. It is solely the responsibility of the military judge to conduct an inquiry adequate to assure that the record reflects the complete understanding of the parties.[7] It is at this stage of the proceedings when the judicial acumen of the military judge must be brought to the forefront. On occasion the agreement may be so straightforward and simple that it is susceptible to only one interpretation and the parties may assume that their under-

standing of the terms and effect of the pretrial agreement are the same.[8] On the other hand, pretrial agreements containing more sophisticated provisions may well require a more detailed and exhaustive explanation and inquiry. Examples would be misconduct provisions[9] and provisions which resort to the law and regulations concerning the provision, such as a post-trial deferral of sentence provision[10] or the accused's continued susceptibility to administrative discharge action.[11]

The failure of the military judge to prepare such a record leaves appellate courts when confronted with claims of prejudice with the duty to set aside the improvident guilty finding and return the case to the convening authority for a rehearing[12] or to give effect to the originally bargained for sentence.[13] The role of the military judge is not to preside as a liturgist, but to conduct a diligent providence inquiry to assure that the rights of the accused are safeguarded and the record will preclude any future false or spurious claims.

Judge BOHLEN joins in Judge EDWARDS' opinion.

DONOVAN, Judge (concurring):

I concur in Senior Judge Baum's opinion as well as that of Judge Edwards and add these observations. Although staffed by qualified attorneys, the military justice system is burdened with a pretrial agreement inquiry procedure that seems more laborious than the requirements of civilian courts. See Fed.R.Crim.P. 11; American Bar Association Standards for Criminal Justice, *Special Functions of The Trial Judge* section 4.2. I concur because it is clear to me that post-World War II congressional and judi-

6. *United States v. Care*, 18 USCMA 535, 40 CMR 247 (1969).

7. *United States v. Kraffa, supra.*

8. *United States v. Passini*, 10 MJ 108 (CMA 1980).

9. *United States v. Dawson*, 10 MJ 142 (CMA 1981).

10. *United States v. Kraffa, supra.*

11. *See United States v. Santos*, 4 MJ 610 (NCMR 1977), and its progeny.

12. *United States v. Orr*, 18 USCMA 568, 40 CMR 280 (1969); Article 66, UCMJ.

13. *United States v. Dawson, supra.*

cial military justice pronouncements mandate a *paternal* system. We therefore perpetuate this line-by-line, error-search procedure in order, *inter alia*, to minimize possibilities of misunderstandings by young service members. In my view, the greater a judge's variance from a detailed inquiry, the lighter is an appellant's burden of persuasion that he did not understand or was misinformed. Although tedious to judge and counsel, the inquiry is fresh to the accused. Moreover, if thoroughly done, it rebuts some accusations of unfairness by critics of pretrial agreements as instruments of justice.