UNITED STATES,

v.

Rodrigo P. AMPARO Chief Warrant Officer (W–2). U.S. Coast Guard.

CGCM 9994.
Docket No. 893.

U.S. Coast Guard Court
of Military Review.

21 Dec. 1987.

Trial Counsel: LT Raymond A. Pelletier, USCG.

Detailed Defense Counsel: LCDR Arthur R. Butler, USCG.

Appellate Government Counsel: LCDR Thomas J. Donlon, USCG.

Appellate Defense Counsel: LCDR Robert Bruce, USCG.

## DECISION

BAUM, Chief Judge:

Appellant, pursuant to a pretrial agreement, pled guilty to one specification of larceny of $13,750.80 in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C.A. § 921. The plea was accepted by

the military judge and findings of guilty pronounced. Thereafter, a general court-martial composed of five officer members sentenced appellant on December 13, 1985 to forfeiture of $500.00 per month for twelve months, confinement for twelve months and dismissal from the service. Subsequently, on May 22, 1986, the convening authority reduced the sentence, in accordance with the pretrial agreement, to a dismissal, confinement for three months and forfeiture of $500.00 pay per month for twelve months. In addition, and also in accordance with the pretrial agreement, the convening authority suspended the dismissal for twelve months and forfeitures in excess of $100.00 per month for twelve months for a period until November 1, 1989 or until appellant repaid $13,750.80 to the Coast Guard Group Buffalo Exchange, whichever occurred first. Appellant later was allowed to resign his commission and was separated from the Coast Guard on July 1, 1986 with an honorable discharge. The record of trial was received in the Office of Chief Counsel on May 30, 1986 and referred to this Court for review under Article 66, Uniform Code of Military Justice, 10 U.S.C.A. § 866 on October 31, 1986.

Appellant has assigned three errors before this Court. The first and third assignments assert errors by the military judge. In the first assignment appellant argues that the judge encouraged the court's abandonment of responsibility to higher authority through a certain instruction to the court members as to sentencing. We do not agree with that reading of the instruction and, accordingly, reject this assignment. The third assignment of error contends the judge failed to adequately question appellant and his counsel concerning the terms of the pretrial agreement. To the contrary, the judge's inquiry with respect to the plea bargain was extremely thorough, covering approximately 36 pages of the record of trial and establishing interpretations and understandings of terms that could very well have presented post-trial problems without the judge's perceptive documentation of the parties' views. Indeed the judge's careful and thorough inquiry complied in both letter and spirit

with *United States v. Green,* 1 M.J. 453 (C.M.A.1976) and *United States v. King,* 3 M.J. 458 (C.M.A.1977), as well as the suggested procedure in *United States v. Williamson,* 4 M.J. 708 (N.C.M.R.1977) and *United States v. Hoaglin,* 10 M.J. 769 (N.C.M.R.1981). We find absolutely no merit to this assignment.

Appellant's second assignment of error raises an entirely different matter—one that persistently plagues the Coast Guard. In this assignment, appellant contends that he has been prejudiced by 322 days delay between sentencing and referral of the record of trial to this Court. As he points out, that delay breaks down into 160 days from the date of sentencing to the convening authority's action and 162 days from that action until the day the record was presented to this Court for review under Article 66, Uniform Code of Military Justice. The latter period consists almost entirely of delay in the Office of the Chief Counsel of the Coast Guard where, according to appellant nothing was done with respect to referral of this case for review by our Court for 153 days after it was received in the Office of Chief Counsel.

In a recent Navy case *United States v. Halcomb,* 25 M.J. 750 (N.M.C.M.R.1987), which dealt with 17 months delay from convening authority action until receipt by the Navy–Marine Corps Court of Military Review, it was concluded that different standards of review apply in assessing prejudice for periods of delay before and after the convening authority's action. In that case, Judge Gladis of the Navy–Marine Corps Court analyzed the Court of Military Appeals opinions on the subject and found a requirement for prejudicial trial error before relief could be granted for delay occurring after the convening authority's action, *United States v. Green,* 4 M.J. 203 (C.M.A. 1978), but saw no such requirement with respect to earlier delay. Other types of prejudice to an accused such as lost opportunities in obtaining civilian employment as a result of belated action by the convening authority could warrant dismissal of charges for that kind of delay. *United*

*States v. Clevidence,* 14 M.J. 17 (C.M.A. 1982). In *Halcomb, supra,* the court was confronted only with delay occurring after the convening authority's action and, under the circumstances of the case, granted sentence relief. Here, we are presented not only with the kind of delay found in *Halcomb, supra,* but asserted untimely action by the convening authority as well. In testing for prejudice to the accused we will apply the different standards set out in *Halcomb, supra,* to each of these discrete time frames. In addition, we will carefully consider another type of prejudice, denial of counsel during the post convening authority action stage, which appellant asserts resulted from the delay in referring the record to this Court. Moreover, if the accused can demonstrate that any of the above mentioned prejudices are directly attributable to the total period of inordinate delay from sentencing to receipt of the record by this Court, we believe our consideration of such asserted prejudice, at least as it bears on the sentence, is not necessarily precluded by the Court of Military Appeals opinions cited in *Halcomb, supra.* Indeed, in light of the sentence reduction in *Halcomb,* we read the opinion to stand for this proposition.

Appellant asserts that he has suffered prejudice from post-trial delay in at least three different ways. He says the instructional error advanced in his first assignment of error requires a sentence rehearing, at which he will be prejudiced by the delay that has occurred. We have already rejected that asserted instructional error and, therefore, find no merit to the argument that there has been prejudice in this regard generated by either the total period of post-trial delay or any included aspect of the period.

■ Appellant next argues that he was prejudiced by a denial of continuing uninterrupted post-trial representation that was caused by the delay in referring this case to the Coast Guard Court of Military Review. Attached to the defense brief are affidavits from appellant and his trial defense counsel which indicate that the defense counsel was transferred on June 30,

1986 from his assigned duties at the Ninth Coast Guard District Office as a result of permanent change of station orders and that after that date he had no further contact with appellant, who was honorably discharged from the Coast Guard on July 1, 1986, after resigning his commission. Appellant argues that since no substitute trial defense counsel was appointed and appellate counsel was not detailed until the case was referred to this Court on October 31, 1986, he was without representation for 153 days while "the record of trial languished in the Office of Chief Counsel."

Government counsel counters with the assertion that appellant's claim that he was without representation is simply untrue, that trial defense counsel, despite his duty station transfer and lack of contact with appellant after July 1, 1986, remained appellant's counsel throughout the period from trial until detail of appellate counsel. The Government points out, and the record reflects, that trial defense counsel performed all his post-trial duties, including the filing of a response to the staff judge advocate's recommended action on the case and the providing of advice to appellant on other matters related to the case after the convening authority's action. The Government contends that the lack of contact after July 1, 1986, particularly in the absence of any specific claim of ineffective assistance of counsel, indicates that appellant's discharge resolved his need for further advice. We agree. Absent an assertion of ineffective assistance resulting in specific prejudice to appellant, we are unable to discern a denial of appellant's right to continuous representation.

■ Finally, appellant contends that his resignation from the Coast Guard was generated by a refusal to transfer him while review of his case was pending at the convening authority level, and that he was, therefore, prejudiced in this regard. Appellant says in an affidavit attached to his brief that after return to his command from confinement on March 17, 1986 he hoped to be immediately transferred so that he "could start fresh at a new unit and do some productive work for the Coast

Guard." He was told that he could not be transferred until the review process was completed and that no one was able to say how long that might take. When advised that he would work for the new Supply Officer, appellant volunteered, instead, to work at the Marine Safety Office because he did not believe the Supply Officer had anything for him to do. That request was granted and he started working at the Marine Safety Office, a command separate from his own unit, on April 10, 1986. One week before starting that job, however, and less than three weeks after release from confinement, appellant submitted his request for resignation from the Coast Guard, citing personal reasons as the basis, which he expanded upon in the resignation letter by explaining that he had suffered "loss of face and an extreme humiliation" and that he found it to be "very agonizing and ... unbearably embarrassing" to remain in his unit in an "over-billeted status." Appellant now argues that if the post-trial review had proceeded more quickly, or if he had been transferred while the reviews were proceeding he would not have resigned.

In response, the Government asserts that appellant's resignation was not the result of long delays or refusals to transfer him. Counsel points out that a week after submission of the resignation request, before the local commander had endorsed it to higher authority, appellant's requested temporary additional duty transfer to the Marine Safety Office was effected and defense counsel had received the record of trial for review, allowing reasonable prediction of the expected date of the convening authority's action. Counsel contends that appellant's decision to resign stemmed from something other than delay in review and that an indication of the real cause can be found in the trial defense counsel's statement attached to appellant's brief, where counsel says, "other administrative actions were being considered." The Government refers to one administrative action being contemplated which could have prompted the resignation, namely appellant's reversion to the enlisted ranks through termination of his Warrant Officer

appointment. That action was recommended by appellant's commanding officer on January 9, 1986. Appellant acknowledged receipt of a copy of that recommendation on February 6, 1986 while confined and indicated that he would submit comments concerning the recommended termination of his Warrant Officer status upon release from confinement. Thereafter, instead, he submitted his request for resignation on April 3, 1986.

While we do not find it necessary to establish with certainty the precise motivation for appellant's resignation, as the Government has tried to do, we are convinced, along with the Government, that, based on all the facts, appellant's resignation was not the result of post-trial delay. We also note that, rather than being prejudiced by resigning, appellant benefited in a significant way. His voluntary decision to resign his commission had the ancillary effect of accelerating the remission of the suspended dismissal, as well as the other suspended portion of the sentence. As a result of his resignation, appellant was left with a sentence of three months confinement, which had already been served, and $100.00 per month forfeitures from May 22, 1986, the date of the convening authority's action, until the end of June 1986 when he was administratively discharged from the Coast Guard. We discern no prejudice from the actions that culminated in this ultimate sentence. We reach this conclusion even if we accepted without question appellant's claim that he would not have resigned had the post-trial reviews proceeded more rapidly, or if he had been transferred while the reviews were proceeding.

Despite the lack of prejudice here, we are nevertheless concerned about the excessive total delay in this case which, in significant part, is unexplained. In this regard, the statement in the Government brief that the period of delay in the Office of Chief Counsel awaiting referral to this Court, "resulted purely from administrative error and is regrettable," does not, in our view, constitute an explanation for the delay. Presumably, the record was inadvertantly overlooked or misplaced, but that

is not made clear by the Government's statement. Unfortunately, unexplained delay of this kind can foster the appearance of official indifference and tarnish the reputation of the Coast Guard's legal support program. Moreover, the memo from trial counsel attached to the record of trial which accounts for delays in preparation of the record can be seen as reinforcing such an appearance.

That document sets forth equipment difficulties as well as other problems associated with preparation of the record, including leave taken by the court reporter. We are reluctant to accept these explanations as fully justifying the delay. The trial counsel, however, appears to consider them as valid reasons for approximately 55 days delay and states that, "[i]f these delays had not occurred the record would have been prepared in less than 60 calendar days." We know of nothing establishing a 60 calendar day standard or goal for preparation of records of trial and note that, when applied to this case, a 60 day standard would require the transcription of less than eight pages per *workday*, or less than one per hour. If this standard is in fact acceptable to those responsible for the administration of military justice in the Coast Guard—and we do not believe it is—it sends a message to court reporters and trial counsel that prompt preparation of records of trial is not important.

Concrete corrective action must be forthcoming in order to prevent such delays in the future. Otherwise, if prejudice resulting from delays is established in a case, the resultant effect on findings and sentence may nullify all time, effort and money expended by the Government in prosecuting the case. From that perspective, post-trial delay should be viewed as a senseless and unnecessary wasting of valuable and diminishing Coast Guard resources. For that reason alone, it is in the best interest of those managing these resources to do so in a manner that is effectively aimed at eliminating this problem once and for all.

While the processing of this case does not meet an acceptable norm, the absence of prejudice leaves us with no justifiable basis for taking action to modify either the findings or sentence because of the delay. We have determined that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings and sentence approved below are affirmed.

BARRY, Judge (concurring):

I concur in the analysis of Chief Judge Baum on each of the assigned errors, and in the disposition of the case. I join with the expression of serious concern over the matter of post trial delay, but I believe the matter bears further analysis and comment.

The shortage of clerical support personnel in the Coast Guard legal support program is well known. Indeed, the recent Coast Guard reorganization may have exacerbated the problem by further reducing the number of legal clerical resources. The practical result, which is a matter of common knowledge within Coast Guard legal circles, is that Coast Guard court reporters often are not, and sometimes can not be, freed from other tasks to devote themselves solely to preparation of records of trial.

It also appears that the preparation of the record in this case was materially interferred with by continuing, and sometimes severe, difficulties with the legal office's word processing equipment, as well as by other problems associated with the recording and transcription of the trial proceedings. Once completed and reviewed by the trial defense counsel, the record was timely authenticated by the Military Judge on 25 April, and was acted upon by the convening authority within 30 days thereafter. While this total delay is clearly undesirable, and appears excessive [1], I can not say, under the circumstances, that it is unexplained.

---

1. I note that in the Army, both general court-martial and BCD special court-martial records receive convening authority action in an average of less than 50 days from sentence, and are received by the Clerk of the Court of Military Review, from worldwide locations, in an average of two weeks or less from the date action

I read the principal opinion to be a clear caution to those responsible for the legal program in the Coast Guard to reallocate resources in some fashion, and to redefine priorities for all military justice personnel, or face the consequences. It would be unfortunate indeed if some improvement were not or could not be accomplished, for one of the potential consequences I foresee could be a return to a rule such as that imposed in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), which, depending on its terms, might allow little or no flexibility in accommodating the results of the conscientious efforts of available military justice personnel. Another potential consequence might possibly be an extension (perhaps to post convening authority action delay) of the rule in *United States v. Clevidence*, 14 M.J. 17 (C.M.A. 1982), which Judge Cook characterized as "totally without definition." 14 M.J. at 19 (Cook, J., dissenting).

**BRIDGMAN and BURGESS, Judges (concurring):** *

We concur fully with the opinion authored by Chief Judge Baum and join with the views of Judge Barry concerning the current state of the Coast Guard legal support program and the adverse consequences that could result if improvements are not forthcoming.

---

was taken. *The Army Lawyer,* October 1987, at 53.

* Judge Josephson recused himself from participation in this decision.