**UNITED STATES**

**v.**

**Wayne D. HALL, 262 65 9914, Private (E–1), U.S. Marine Corps.**

**NMCM 87 2342.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 18 Feb. 1987.

Decided 26 Feb. 1988.

LCDR Robert J. Smith, JAGC, USN, Appellate Defense Counsel.

LT Diane H. Corning, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, C.J., and COUGHLIN and RUBENS, JJ.

RUBENS, Judge:[1]

Pursuant to his pleas, appellant was convicted at a general court-martial bench trial on 18 February 1987 of two specifications of larceny, two specifications of forgery, and seven specifications of bad checks in violation of Articles 121, 123, and 123a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921, 923, and 923a, respectively. He was sentenced to a dishonorable discharge, confinement for twelve years, forfeiture of $300 pay per month for 12 months, a fine of $2,000, and confinement for an additional 3 months if the fine was not paid. Pursuant to the pretrial agreement, the convening authority changed the fine to forfeitures and approved forfeitures of $633 pay per month for 6 months and forfeitures of $300 pay per month for 6 months thereafter, reduction to E–1, a dishonorable discharge, and confinement for 12 years, but suspended all confinement in excess of 24 months for one year from the date of trial.

Appellant alleges as his single assignment of error that the sentence to 12 years of confinement is inappropriately severe.

The presentencing portion of this trial was largely uneventful: the military judge considered the page 1 data concerning appellant; the Government presented matters in aggravation; the defense presented matters in extenuation and mitigation, including appellant's unsworn statement; finally, each counsel made an argument on sentence and the military judge ·closed the court-martial for deliberations. However, the military judge opened the court-martial forty minutes later and immediately announced a recess to confer with counsel at a conference under Rule for Courts–Martials (R.C.M.) 802, Manual for Courts–Martial, United States, 1984 (MCM). The military judge called the court-martial to order twenty-six minutes later and announced:

MJ: The court will come to order. The record should reflect that all parties who were present when the court recessed are again present.

During the recess, counsel for the government, counsel for the accused, and the military judge held a conference pursuant to Rule for Courts–Martial 802. The court advised both counsel at that time, after considering and reconsidering the evidence on sentencing that was heard in this case, and trying to give as full weight as it possibly can to—I suppose you would call it the leading extenuating theory of the defense, namely the Filipino wife in question and by inference the amount of pressure, if you will, that that situation put on the accused to generate extra money. *Nevertheless, I indicated to both counsel. that it believes that a substantial amount of confinement should be awarded in the case.* The court discussed with counsel the possibility and indeed *whether or not it even had the power in the military justice system to reject the pretrial agreement in this case if it found that the amount of confinement agreed to by and between the accused and the convening authority was insufficient to protect society.* And, the court and counsel discussed various options and interim outcomes should the court take such a course. And, we all recognize that it, of course, is perhaps a *novel issue of military law,* although done with regularity by judges presiding in criminal cases in federal district courts and state courts.

The court, at this point, has decided to go ahead and conclude this trial unless it finds that the sentence to confinement agreed to by the accused and the convening *authority is grossly inadequate to protect society.* And, I indicate [sic] to both sides that this has been a growing concern with this particular court, but I'm disposed unless, if you will, my conscience is shocked in the direction that it normally isn't, that is, *unless the agreement is so grossly inadequate that I*

1. Before his assignment to this Court, Judge Rubens was assigned as the Article 32, UCMJ, investigating officer in this case. Appellant waived the Article 32 investigation on 10 February 1987. The investigation was never begun. Judge Rubens had no other connection with or knowledge of this case until it was received for appellate review.

*feel society is not adequately protected, then I intend to simply conclude the trial in a routine fashion.*

The court will also, however—may, however, consider after trial how it may pursue this issue following the trial. And, I think I should also indicate for the record that I still at this point have not and did not want to see the quantum portion of the pretrial agreement. Gentlemen, does that adequately describe our conference?

TC: Yes, sir.

DC: Yes, sir.

R. 84–85 (emphasis added). The military judge then announced the sentence and completed the R.C.M. 910 pretrial agreement inquiry. After ascertaining that appellant and both counsel agreed with his interpretation of the quantum portion of the agreement (AE II), the military judge stated: "Okay. I continue to find the pretrial agreement to be in accord with appellate case law, not contrary to public policy, *and with great misgivings*, nor my own notions of fundamental fairness." R. 90 (emphasis added). Finally, the military judge notified appellant of his appellate rights in accordance with R.C.M. 1010 and adjourned the court-martial.

The military judge apparently believed that his duties included making an independent determination whether the quantum portion of the pretrial agreement adequately protected society. The military judge's statement raises several issues: first, is his statement with respect to judicial review of a pretrial agreement correct; if not, what is the military judge's role with respect to review of the quantum portion of a pretrial agreement; finally, if the military judge's statement in this case is incorrect, did this constitute prejudicial error?

The military judge may have voiced the legal basis for his beliefs concerning judicial scrutiny of the quantum portion of pretrial agreements at the R.C.M. 802 conference, but he did not state them on the

record. He did indicate, however, that he was not sure that he had the power to reject the agreement because it did not adequately protect society and that this was a "novel issue of military law." R. 85.

The UCMJ is silent on pretrial agreements. MCM, 1969 (Rev.), was also silent on pretrial agreements, but they are discussed at some length in MCM, 1984. R.C.M. 910(f) sets forth the mandatory minimum plea agreement inquiry. Essentially, the military judge is required to examine the agreement, reject any provision which does not comply with R.C.M. 705, and then conduct an inquiry to ensure that the accused understands the agreement and that the parties agree with his explanation of the terms. The trial guide in Appendix 8 of MCM, 1984, contains a sample plea agreement inquiry[2] which incorporates these requirements. These provisions do not state that the military judge has any duty or right to review the quantum portion of the pretrial agreement for appropriateness. The military judge, therefore, could not have relied on the UCMJ, R.C.M. 910, or the trial guide in MCM, 1984, for his beliefs concerning judicial scrutiny of pretrial agreements.[3] Likewise, the Manual of the Judge Advocate General does not authorize or require this review.

The military judge stated that Federal District Court judges regularly reject plea agreements which do not adequately protect society. R. 85. Although correct, this is undoubtedly so because the trial judge is the party who approves such agreements in the federal civilian system. Federal Rule of Criminal Procedure 11(e) states that the attorney for the Government and the attorney for the defendant negotiate, reach agreement, and then present the plea agreement to the Court which either accepts or rejects it. R.C.M. 705(a), however, clearly indicates that the military judge in the military justice system has no such role when it states that "an accused and the convening authority may enter into a pretrial agreement in accordance with this

---

**2.** *See* A8–7 to A8–9 and note 98, A8–16, MCM, 1984.

**3.** *See also* Recommended Members Trial Guide, Navy–Marine Corps Trial Judiciary, pp. 13–13A (January 1987) (no requirement to review quantum portion for appropriateness).

rule." Unlike the federal civilian system, therefore, the agreement is between the accused and the convening authority and not between opposing counsel. R.C.M. 705(d)(4), moreover, states: "The convening authority may either accept or reject an offer of the accused to enter into a pretrial agreement. The decision is within the sole discretion of the convening authority." In the military justice system, therefore, the convening authority is the party with the discretion to accept or reject the accused's offer and not the trial judge. The rest of R.C.M. 705 deals with procedural matters and permissible and prohibited terms and conditions. The list of prohibited terms and conditions does not include a sentence limitation which does not adequately protect society. R.C.M. 705(c)(1).

The military judge, therefore, could not have relied on R.C.M. 705 in concluding that he has the duty or right to review the quantum portion of the pretrial agreement for appropriateness. That interpretation of R.C.M. 705, moreover, would be logically inconsistent with the convening authority's post-trial duties and responsibilities. R.C.M. 1107(b)(1) states: "The action to be taken on the findings and sentence is within the sole discretion of the convening authority. Determining what action to take on the findings and sentence of a court-martial is a matter of command prerogative." The accompanying Discussion states that "[t]he action is taken in the interests of justice, discipline, mission requirements, clemency, and other appropriate reasons." It would not be logical to permit the military judge to reject a plea agreement accepted by the convening authority which he believes to be too lenient when, after trial, that same convening authority has the power to disapprove the findings or sentence for any reason or no reason at all.[4]

The next step is to determine if appellate case law could have been the source of the

military judge's beliefs concerning the scope of judicial review of plea agreements. MCM, 1984, codified many of the decisions issued prior to its effective date.[5] *United States v. Hoaglin*, 10 M.J. 769 (NCMR 1981), which was not codified, made the seven-step inquiry announced in *United States v. Williamson*, 4 M.J. 708 (NCMR 1977), obligatory with Navy and Marine Corps trial judges. This seven-step process in *Williamson* was designed to improve compliance with *United States v. Green*, 1 M.J. 453 (C.M.A.1976), and *United States v. King*, 3 M.J. 458 (C.M.A.1977). The fifth step in this process first enunciated in *Williamson* requires the military judge to

[s]trike all provisions, with the consent of the parties, that *violate either appellate case law, public policy*, or *the judge's own notions of fundamental fairness;* further, make a statement on the record that the judge considers all remaining provisions to be in accord with appellate case law, not against public policy, and not contrary to his own notions of fundamental fairness.[6]

The military judge's post-sentencing findings indicate that he relied on this *Williamson* language. This public policy/fundamental fairness language comes from the concurring opinion in *United States v. Elmore*, 1 M.J. 262, 264 (C.M.A.1976) (Fletcher, C.J., concurring). *Elmore* predated MCM, 1984. It is reasonable to assume that MCM, 1984, would have codified or expressly rejected any requirement in Chief Judge Fletcher's comments in *Elmore* for the military judge to so scrutinize the quantum portion of the pretrial agreement. It did neither.

The decisions which have used the terms "public policy" and "fundamental fairness," moreover, do not support the military judge's interpretation. There is a theoretical distinction between these two

---

**4.** *See also* Article 60(c), UCMJ ("The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority."), and Hearings on H.R. 2498 before a Subcomm. of the House Comm. on Armed Services; 81st Cong., 1st Sess. 1184 ("no reason at all").

**5.** *See* MCM, Appendix 21, Analysis at A21–35 to A21–36 and A21–53.

**6.** *Hoaglin, supra* at 770. (Emphasis Added.)

terms. Public policy generally refers to societal interests above and beyond those of the individual accused while fundamental fairness refers to the particular interests of an accused. The decisions, however, tend to use these terms interchangeably. *See, e.g., United States v. Partin,* 7 M.J. 409 (C.M.A.1979) (concerning a provision which reinstated capital referral if appropriate authority overturned a guilty plea to a non-capital offense), and *United States v. Callaway,* 21 M.J. 770, 774 (ACMR 1986) (concerning a provision which waived personal appearance of a character witness). Assuming *arguendo,* however, that the military judge based his statements on the "fundamental fairness" language in *Williamson, supra,* and distinguished "fundamental fairness" from "public policy" questions, decisions which have used the term "fundamental fairness" do not hold that the military judge has any duty or right to review the quantum portion of the pretrial agreement for fundamental fairness to the Government. Rather, they indicate that the question is always whether a particular provision is fundamentally fair *to the accused.*[7]

 The military judge, then, was incorrect when he stated that he should examine the quantum portion of the pretrial agreement and reject it if it was too lenient to adequately protect society. The final step in the analysis is to determine whether the military judge's statements constitute prejudicial error. Appellant does not allege that this erroneous statement is error *per se.* Rather, he argues that the military judge lost sight of "his *judicial responsibility* to adjudge a *fair* sentence" and, therefore, that he adjudged an inappropriately severe sentence to ensure that the convening authority had not "given away

the store."[8] It is important to note that the military judge did not reject this pretrial agreement. After sentencing, he completed the R.C.M. 910 inquiry and entered the appropriate *Hoaglin* findings with merely the comment that he had "great misgivings" about the leniency of the quantum portion. R. 90. Any prejudicial error, then, must be found in the mere statement of his beliefs before sentencing or in the punishment adjudged. Trial defense counsel apparently did not find the military judge's statement error because he did not object, request to *voir dire* the military judge, or move for a mistrial as to sentence. He did not allege that the incident was error in his R.C.M. 1106(f)(4) response. An allegation that the mere statement of this principle was error, moreover, is highly speculative. There is no evidence in the record or in any post-trial submissions, for example, that the military judge's statements chilled the defense counsel's exercise of his post-trial responsibilities under R.C.M.'s 1105 and 1106 or any pretrial agreement negotiations for other accused. There is also no evidence that the convening authority read the military judge's statement in the record and was maddened by this apparent usurpation of a matter entrusted to his sole discretion by the President, let alone that the reputation of the military justice system in general or Marine Corps judge advocates in particular suffered as a result.

 Although the adjudged sentence of confinement for 12 years is legal and was substantially suspended by the convening authority, we find that it was inappropriately severe under all the facts and circumstances. Accordingly, the findings and only so much of the sentence as provides for a dishonorable discharge, confinement

---

7. *See e.g., Shepardson v. Roberts,* 14 M.J. 354, 358 (C.M.A.1983) (fundamental fairness requires Government to abide by pretrial agreement on which accused has reasonably relied to his detriment); *United States v. Christian,* 20 M.J. 966 (ACMR 1985) (latent ambiguity in pretrial agreement not fundamentally unfair); *United States v. Holmes,* 17 M.J. 830, 831 (ACMR 1984), *pet. denied,* 18 M.J. 438 (C.M.A.1984) (pretrial agreement provision permitting convening authority to approve entire sentence if bad-conduct discharge not adjudged not violative of fundamental fairness); and *United States v. Sercey,* 47 C.M.R. 955 (ACMR 1973) (ambiguity in pretrial agreement must be resolved in accused's favor to insure fundamental fairness, citing *United States v. Buchheit,* 46 C.M.R. 866 (ACMR 1972)).

8. Appellate Defense Brief at 3 (original emphasis.)

for 24 months, reduction to E–1, and forfeiture of $633 pay per month for 6 months to be followed by a forfeiture of $300 pay per month for 6 months, are affirmed.

BYRNE, Chief Judge and
COUGHLIN, Judge (concurring):

██ We believe that the extra prophylactic requirements prescribed in *United States v. Williamson*, 4 M.J. 708 (NCMR 1977), are no longer applicable to the Navy and Marine Corps. The President, acting pursuant to his authority under Article 36 of the Uniform Code of Military Justice, 10 U.S.C. § 836, in Rule for Courts–Martial 910(f), implicitly rejected, by omission, the additional *Williamson* requirements.