UNITED STATES, Appellee

v

ESTEBAN PALOS, Fireman, U. S. Navy, Appellant

20 USCMA 104, 42 CMR 296

No. 22,991

November 6, 1970

*Lieutenant Scott M. Feldman,* JAGC, USNR, was on the pleadings for Appellant, Accused.

*Lieutenant Colonel Charles J. Keever,* USMC, and *Captain Frank J. Kaveney,* USMCR, were on the pleadings for Appellee, United States.

## Opinion of the Court

QUINN, Chief Judge:

At his request, the accused was tried by a military judge sitting as a special court-martial without court members. He pleaded guilty to the charge and its specifications consisting of four unauthorized absences, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886, and was sentenced to a bad-conduct discharge, confinement at hard labor for two months, and accessory penalties. Two errors are alleged.

First, the accused contends that his plea of guilty should not have been accepted because the judge did not formally find, and note for the record, that the accused made a knowing, intelligent and conscious waiver of the right to a trial of the facts by a court-martial composed of an appropriate number of court members, and of the right to confront and cross-examine adverse witnesses and the right not to incriminate himself. See United States v Care, 18 USCMA 535, 40 CMR 247 (1969). The Government maintains that the judge's personal examination of the accused as to his rights as an accused, which is set out as Appendix A to this opinion, manifests the judge's conclusion that the plea of guilty was understandingly and voluntarily entered by the accused.

For various reasons, more comprehensive procedures than previously utilized have been instituted to insure that an accused who proposes to plead guilty fully understands the nature of the charge against him, the meaning and effect of a plea of guilty, and that he has complete freedom to choose whether or not to enter a plea of guilty. One of the major objectives was to guard against inadvertent waiver by the accused of constitutional and statutory rights. This Court addressed itself to the matter in United States v Chancelor, 16 USCMA 297, 36 CMR 453 (1966). Additional guidelines were indicated as necessary supplements to the procedure specified in the Manual for Courts-Martial, United States, 1951. We returned to the matter in *Care* to refine the nature and scope of the personal examination that should be made of the accused to insure that the record of trial properly reflects his understanding, and his voluntary and intelligent waiver, of his constitutional and statutory rights.

United States v Care, supra, postulated that, before a plea of guilty be accepted, the record of trial must reflect that "the elements of each offense charged have been explained to the accused" and that the military judge "questioned the accused about what he did or did not do, and what he intended (where this is pertinent)." *Id.,* at page 541. The extract of the personal examination of the accused by the judge in this case, which is set out in the Appendix, demonstrates the accused received a full explanation of the elements of the offense, and that he freely acknowledged he committed the acts charged. *Care* also required, as a precondition to acceptance of a guilty plea, that the military judge advise the accused "personally" that his plea "waives his right against self-incrimination, his right to a trial of the facts by a court-martial, and his right to be confronted by the witnesses against him." *Id.,* at page 541. The judge's examination here demonstrates the accused was informed of these matters, and that he desired to waive the rights he would otherwise have at trial by entering a plea of guilty. As far as the requisites of the examination are concerned, therefore, the trial judge complied with *Care.*

**105**

Beyond delineation of the nature and scope of the preliminary examination of the accused, *Care* also commented on the affirmative duty of the trial judge to "make a finding that there is a knowing, intelligent, and conscious waiver" by the accused of his rights; but it said nothing about the manner in which the finding should be indicated on the record. *Id.*, at page 542. According to the accused, unless "express words . . . setting forth" the judge's findings of fact are specifically and formally entered in the record, "the appellate courts can not know" whether he actually found the essential facts. The United States Navy Court of Military Review rejected a similar contention in United States v Smart, No. 70–0473 (NCMR April 20, 1970).

The reference in *Care* to "a finding" by the judge as to the accused's waiver of his trial rights was predicated upon the Manual provision that the court "should not accept the plea without first determining that it is made voluntarily with understanding of the nature of the charge." Manual for Courts-Martial, United States, 1951, paragraph 70*a*, at page 107. Substantially the same language appears in the 1969 Manual, which was in effect at the trial of this case. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 70*a*, at page 12-9. See United States v Care, supra, at page 541.

The Manual provision is almost identical with that provided in Rule 11, Federal Rules of Criminal Procedure. We may, therefore, look to Federal civilian court decisions on Rule 11 for guidance. United States v Knudson, 4 USCMA 587, 590, 16 CMR 161 (1954). Previous to amendments made in 1966, Rule 11 provided that the court "shall not accept the plea [of guilty] without first determining that the plea is made voluntarily with understanding of the nature of the charge." Other conditions to the acceptance of a plea were specified in 1966, but the language defining the duty to determine the voluntariness of the plea of guilty and the accused's understanding of its effects remained unchanged. Since the

language remained the same, the earlier judicial gloss on Rule 11 would appear to be still valid.

Several Courts of Appeals have considered the provision as contained in the pre-1966 version of the rule. Consistently, they held that the trial judge did not have to state, expressly and formally, on the record that he had determined from his examination of the accused that the plea of guilty was voluntary and that the accused understood the nature of the offense and the meaning and effect of a plea of guilty. Nunley v United States, 294 F2d 579, 580 (CA 10th Cir) (1961), certiorari denied, 368 US 991, 7 L Ed 2d 527, 82 S Ct 607 (1962); Bone v United States, 351 F2d 11 (CA 8th Cir) (1965); Bongiorno v United States, 424 F2d 373 (CA 8th Cir) (1970). In *Bongiorno,* the Court of Appeals said:

> ". . . Rule 11 as it stood at the time of defendant's conviction to the extent here material reads: 'The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea was made voluntarily with understanding of the nature of the charge.' In interpreting Rule 11 as it stood at the time of defendant's conviction, courts have frequently held that while Rule 11 imposes on the sentencing court the responsibility of making certain that voluntariness and understanding of the nature of the charge exists, there is no requirement that the court enter a formal finding or recitation to that effect and there is no requirement that a particular form or ritual be followed." [Citing cases.] [*Id.*, at page 374.]

In McCarthy v United States, 394 US 459, 22 L Ed 2d 418, 89 S Ct 1166 (1969), the Supreme Court invalidated the acceptance of a plea of guilty for failure of the trial judge to comply with Rule 11. However, the Court did not consider the matter in issue in this case. Since the Court undertook to review *in extenso* the requirements of Rule 11, its failure to disavow the earlier appellate gloss on this part

of Rule 11 would appear to support the validity of the gloss. More significant, however, is the Supreme Court's opinion in the later case of Brady v United States, 397 US 742, 25 L Ed 2d 747, 90 S Ct 1463 (1970). There, the accused entered a plea of guilty to a charge of kidnapping in violation of 18 USC § 1201(a). Before accepting the plea, the United States District Court judge personally examined the accused as to the voluntariness of his act and his understanding of the effects of a plea of guilty. From the extract of the examination set out in the opinion, it does not appear that the trial judge entered on the record an explicit finding that the plea was voluntary and made with understanding of its meaning and consequences. 397 US, at pages 743–744, footnote 2. Nevertheless, the Supreme Court determined that the "trial judge in 1959 found the plea voluntary before accepting it," and it concluded that there was "no reason on this record to disturb" the judgment. 397 US, at page 749.

A number of Federal courts have considered Rule 11 subsequent to *McCarthy*. Without discussion the Tenth Circuit Court of Appeals appears to have assumed that, under *McCarthy's* rationale, the trial judge must formally indicate on the record his determination as to the voluntariness of the plea of guilty and the accused's understanding of its effect. Barber v United States, 427 F2d 70 (CA 10th Cir) (1970). A contrary unarticulated assumption appears in opinions of the Courts of Appeals for the Sixth and Eighth Circuit. Kress v United States, 411 F2d 16 (CA 8th Cir) (1969); United States v Sternman, 415 F2d 1165 (CA 6th Cir) (1969), certiorari denied, 397 US 907, 25 L Ed 2d 88, 90 S Ct 903 (1970). See also Burton v United States, 307 F Supp 448 (D Ariz) (1970). These later decisions are, in our opinion, strongly supported by principles of procedure promulgated by the Supreme Court of the United States in a different but closely related matter.

In Jackson v Denno, 378 US 368, 395, 12 L Ed 2d 908, 84 S Ct 1774 (1964), the Supreme Court held that when a confession is offered in evidence the trial judge must make "a proper determination of voluntariness . . . prior to the admission of the confession." In Sims v Georgia, 385 US 538, 544, 17 L Ed 2d 593, 87 S Ct 639 (1967), the Court commented on the form in which this determination must appear in the record. It said: "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." It seems to us that when the trial judge demonstrates his awareness of the necessity for a personal examination of the accused to establish the factual basis for a particular ruling by conducting on the record an extensive examination to establish the facts, the ruling itself manifests, with unmistakable clarity, the judge's conviction that his ruling is supported by the facts legally required for the result he reached.

The Manual points out that it is "an interlocutory" question whether a plea of guilty is determined to be voluntary and understood by the accused. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 70b(5). A ruling on an interlocutory matter, after a full hearing into the facts, is normally made without formal explication of findings of fact; and it includes all findings of fact necessary to the decision, which are supported by the evidence heard by the judge. United States v Alaniz, 9 USCMA 533, 26 CMR 313 (1958). True, the judge may note specifically on the record his findings of fact. Certainly, that is a good practice; and if followed, the burden of appellate review of the correctness of the ruling would be materially lessened. For that reason alone we would recommend it to trial judges. However, the sufficiency of the facts to support the ruling may be challenged on appellate review, with or without formal findings of fact; and the absence of

formal findings does not itself invalidate the ruling. *Care* did not require more for acceptance of the plea of guilty. It is indeed true that *Care* said that the judge "must make a finding." The word "finding" was used as a synonym for the word "determination," which is the word used in the Manual and in Rule 11. A "determination" is a decision predicated upon the underlying facts; it is not a delineation of each fact essential to the determination. We conclude, therefore, that ▪ neither constitutional requirement nor our decision in *Care* precluded acceptance of the plea of guilty in this case, without first setting out in the record formal and explicit findings of fact.

In his second assignment of error, the accused contends he was prejudiced by certain comments made by the military judge as to the manner of termination of one of the four periods of unauthorized absence. During sentence proceedings, trial counsel offered into evidence extracts of three entries in the accused's service record to show the absences were terminated by apprehension. Defense counsel objected to one of the entries. He maintained that this absence was not terminated by apprehension. The accused testified on the issue. He stated he had "surrendered" himself "voluntarily" to an agent of the Federal Bureau of Investigation and a city detective. The judge overruled the objection with the following remarks:

". . . [T]he only way he can surrender is on board. Any other circumstance, he's apprehended, and I'll consider this in my deliberations."

Government counsel concede that the judge's remarks were erroneous (see United States v ▪ Kitchen, 5 USCMA 541, 18 CMR 165 (1955)), but they insist the error was not prejudicial to the accused. The record indicates that the error was noted and commented on by the staff judge advocate to the general court-martial authority

when the record was on review. It further appears that the sentence was reassessed in light of the error. Although accused did not receive any benefit from the reassessment, the reconsideration was sufficient to accord the accused the relief to which he was entitled. United States v Stene, 7 USCMA 277, 281, 22 CMR 67 (1956).

The decision of the United States Navy Court of Military Review is affirmed.

## APPENDIX A

"MJ: I have not received a request in writing for trial before military judge alone.

"TC: I have such a request.

"(A document was presented to the military judge.)

"MJ: Fireman PALOS, if this request is granted, you will be tried before a judge alone rather than, as is your right, to be tried before a court-martial consisting of commissioned officers and a court—or a court consisting of at least one-third enlisted persons. Do you understand this?

"ACCUSED: Yes, sir.

"MJ: Is it your desire to be tried before a military judge alone?

"ACCUSED: Yes, sir.

"MJ: The request is granted.

· · · · · ·

"MJ: Have you had sufficient time to consult with your counsel concerning your plea?

"ACCUSED: Yes, sir.

"MJ: The maximum authorized punishment for the offenses to which you have pleaded guilty is confinement at hard labor for six months, forfeiture of two-thirds pay for six months, reduction to the lowest enlisted pay grade E–1, and imposition of a bad conduct discharge. Do you understand this?

"ACCUSED: Yes, sir.

"MJ: You have pleaded guilty to four specifications and a charge alleg-

ing violation of Article 86, Uniform Code of Military Justice. By so doing, you have admitted every act or omission and every element with respect to the offenses to which you have pleaded guilty. The elements of the offenses to which you have pleaded guilty are that you did without proper authority absent yourself from your organization, Naval Station, Treasure Island, at or about 1230 hours, 11 March 69, until at or about 1045 hours, 14 May 69. Were you, in fact, on unauthorized absence during this period?

"ACCUSED: Yes, sir.

"MJ: Specification 2, that you did, without proper authority, absent yourself from Naval Station, Treasure Island, your unit, at or about 0700 hours, 22 May 69, until at or about 0700 hours, 28 May 69. Were you, in fact, on unauthorized absence during this period?

"ACCUSED: Yes, sir.

"MJ: Specification 3, that you did, without proper authority, absent yourself from your unit, Naval Station, Treasure Island, from at or about 1230 hours, 5 June 69, until at or about 0155 hours, 2 July 69. Were you, in fact, on unauthorized absence during this period?

"ACCUSED: Yes, sir.

"MJ: Specification 4, that you did, without proper authority, absent yourself from your unit, Naval Station, Treasure Island, at or about 0700 hours, 14 July 69, until at or about 2304 hours, 27 August 69. Were you, in fact, on unauthorized absence during this period?

"ACCUSED: Yes, sir.

"MJ: Your plea will subject you to findings of guilty without further proof of those offenses, in which event you may be sentenced by the court to the maximum punishment authorized for them. You are legally entitled to plead not guilty and place the burden upon the prosecution of proving your guilt of those offenses. Your plea of guilty will not be accepted unless it appears that you under-

stand its meaning and effect and that you are voluntarily pleading guilty because you are convinced that you are guilty. If you are not convinced that you are guilty, you should not allow any other considerations to influence you. Do you understand this?

"ACCUSED: Yes, sir.

"MJ: Your plea of guilty is a matter that amounts to self-incrimination. You have a constitutional right not to incriminate yourself. Do you understand this?

"ACCUSED: Yes, sir.

"MJ: Is it your desire that you waive your right against self-incrimination?

"ACCUSED: Yes, sir.

"MJ: You also have a right to be confronted by witnesses against you. Your plea of guilty will waive this right also. Is this your desire?

"ACCUSED: Yes, sir.

"MJ: Do you understand what this right is?

"ACCUSED: I believe so, sir.

"MJ: Well, the Constitution says that witnesses must appear and testify against you. You have an absolute right to have them do this. Do you understand this?

"ACCUSED: Yes, sir.

"MJ: If you plead guilty, they don't have to appear. There's no necessity. There's nothing further to find you guilty of on these charges or this charge and these specifications. Do you understand this?

"ACCUSED: Yes, sir.

"MJ: Are you voluntarily pleading guilty?

"ACCUSED: Yes, sir.

"MJ: Are you convinced this is in your own best interests?

"ACCUSED: Yes, sir.

"MJ: Fireman PALOS, your pleas of guilty will be accepted."

Judge DARDEN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree with my brothers that the military judge's error, with regard to whether the accused surrendered or was apprehended in connection with a prior absence without leave, was cured at the convening authority level. However, I disagree with their holdings on the principal issue in this case.

In United States v Care, 18 USCMA 535, 40 CMR 247 (1969), this Court, concerned with the perfunctory manner in which pleas of guilty were being accepted in trials by courts-martial, and the "less than satisfactory implementation" of our prior recommendation on this issue in United States v Chancelor, 16 USCMA 297, 36 CMR 453 (1966), set forth in specific terms the procedure to be followed, *on the record,* by the military judge (president of a special court-martial without a military judge) in determining "whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." In light of the then very recent decision of the Supreme Court in Boykin v Alabama, 395 US 238, 23 L Ed 2d 274, 89 S Ct 1709 (1969), we added the following requirement:

> "Further, *the record* must also demonstrate the military trial judge or president personally addressed the accused, advised him that his plea waives his right against self-incrimination, his right to a trial of the facts by a court-martial, and his right to be confronted by the witnesses against him; and that he waives such rights by his plea. Boykin v Alabama, supra. *Based upon the foregoing inquiries and such additional interrogation as he deems necessary, the military trial judge or president must make a finding that there is a knowing, intelligent, and conscious waiver in order to accept the plea."* [Emphasis supplied.] [*Care,* supra at pages 541, 542.]

In the case at bar, while the military judge complied with the require-ments of *Care,* to the extent that he informed the accused that by his plea of guilty he waived his right against self-incrimination, his right to a trial of the facts by a court-martial, and his right to be confronted by the witnesses against him, and secured the accused's acknowledgment that he understood, he did not make a *specific finding on the record* that the accused knowingly, intelligently, and consciously waived these rights. My brothers hold, for the reasons set forth in their opinion, that this finding need not be articulated on the record. I disagree.

My brothers contend that the reference in *Care* to a finding by the judge as to the accused's waiver of his trial rights was predicated upon the Manual provision (paragraph 70*a,* Manual for Courts-Martial, United States, 1969) that the court should not accept the plea without first determining that it is made voluntarily with understanding of the nature of the charge. Since this language is almost identical with that provided in Rule 11, Federal Rules of Criminal Procedure, they look to Federal civilian court decisions on Rule 11 for guidance.

While the Manual provision refers generally to the matter of pleas of guilty, it was precisely because the Manual and the Manual's Trial Procedure Guide (Appendix 8) contained no suggestion for an explanation of the elements of the offenses and no suggestions for questions eliciting the facts leading to a guilty plea that this Court established the requirement in *Care* for a searching inquiry in this area. That requirement in *Care,* under consideration in this case, is in addition thereto and was, as noted, based on the holding in Boykin v Alabama, supra, and McCarthy v United States, 394 US 459, 22 L Ed 2d 418, 89 S Ct 1166 (1969), both of which gave a *new* interpretation to Rule 11. As we stated in *Care,* at page 538:

> ". . . Of a guilty plea, the court said in *McCarthy:*
>
> > '. . . A defendant who enters such a plea simultaneously waives

110

several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." Johnson v Zerbst, 304 US 458, 464, 82 L Ed 1461, 1466, 58 S Ct 1019, 146 ALR 357 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.' (394 US, at page 466.)

"From a constitutional standpoint, the *McCarthy* opinion reiterates that the objective of Rule 11 is to assure a defendant's guilty plea is truly voluntary. [Citations omitted.]

"In a later case, Halliday v United States, 394 US 831, 833, 23 L Ed 2d 16, 89 S Ct 1498 (1969), the court declined to apply *McCarthy* retroactively 'in view of the large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11.'"

The importance of *McCarthy* and *Boykin*[1] to a proper understanding of the application of Rule 11 to cases where the guilty plea was accepted after April 2, 1969, the date of the *McCarthy* decision, was highlighted by the Supreme Court in Brady v United States, 397 US 742, 747, 748, 25 L Ed 2d 747, 756, 90 S Ct 1463 (1970), footnote 4:

"The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. See nn. 5 and 6, *infra*.

*The new element added in Boykin was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.* This Court has not yet passed on the question of the retroactivity of this *new requirement.*" [Emphasis partially supplied.]

My brothers' reliance on Federal civilian decisions involving interpretation of Rule 11 in cases where the guilty plea was accepted prior to April 2, 1969, is, in my opinion, seriously misplaced. McCarthy v United States, Boykin v Alabama, and Brady v United States, all supra. Cf. Barber v United States, 427 F2d 70 (CA 10th Cir) (1970). Both Kress v United States, 411 F2d 16 (CA 8th Cir) (1969), and United States v Sternman, 415 F2d 1165 (CA 6th Cir) (1969), certiorari denied, 397 US 907, 25 L Ed 2d 88, 90 S Ct 903 (1970), referred to by my brothers, involved cases in which the plea was entered prior to the effective date of *McCarthy* and each cited Halliday v United States, 394 US 831, 23 L Ed 2d 16, 89 S Ct 1498 (1969), as the reason for declining to give retroactive effect to *McCarthy*. In Burton v United States, 307 F Supp 448 (D Ariz) (1970), also cited by the majority, the date of the guilty plea is not set forth. However, the case was heard in the Federal District Court and the opinion was rendered on January 7, 1970, only nine months after *McCarthy*. Since it involved an action under 28 USC § 2255, to vacate a prior judgment and sentence, it is not unlikely that the original plea was made prior to April 2, 1969. In any event, the court, without reference to either *McCarthy* or *Halliday*, simply found from the reporter's notes on the proceedings in court when the plea was received that Rule 11 had been fully complied with.

But regardless of how the Supreme Court or other Federal civilian courts

---

[1] Although Boykin pleaded guilty prior to April 2, 1969, his conviction, following a plea of guilty, was reversed because so far as the record disclosed, the trial judge asked no questions of Boykin concerning his plea and Boykin did not address the court.

might in the future rule with regard to Rule 11 and the form of compliance which would be considered as acceptable in light of "the new element . . . in *Boykin*," the plain fact of the matter is that *this Court* has already delineated the procedure to be followed in trials by courts-martial with regard to the acceptance of a plea of guilty. Rules of evidence and procedure in military trials are not always in accord with those which pertain in civilian trials. Cf. United States v White, 17 USCMA 211, 38 CMR 9 (1967); United States v Smith, 13 USCMA 105, 32 CMR 105 (1962).

The language of *Care* is clear. The record of each case must set forth verbatim *all* of the proceedings. Article 54, Uniform Code of Military Justice, 10 USC § 854; paragraph 82*b*, Manual, supra; United States v Whitman, 3 USCMA 179, 11 CMR 179 (1953). Therefore, the record, of necessity, must affirmatively show every ruling of the military judge. This record does not reflect the ruling required in *Care*. Insofar as this record is concerned, the military judge was unaware of his responsibility to make a finding, *on the record*, that the accused knowingly, intelligently, and consciously waived those constitutional rights explicated in *Care*. The issue involves due process of law (United States v McCarthy, supra) and may not be tampered with. As *Boykin* itself notes, reversible error is present when such *record showing* is absent.

The procedural requirement in *Care*, for a finding on the record, is, in my opinion, at least if not more important than the requirement laid down by this Court in United States v Donohew, 18 USCMA 149, 39 CMR 149 (1969), that an accused's understanding of his entitlement to the advice and services of counsel as provided by Article 38(b), Code, supra, 10 USC § 838, be specifically reflected on the record. In United States v Fortier, 19 USCMA 149, 41 CMR 149 (1969), we did not hesitate to summarily reverse for failure to follow *Donohew*, despite the fact that Fortier was represented by certified counsel and specifically informed the president of the court that she was satisfied with the defense counsel then representing her. In light of our refusal to depart from the strict procedural requirements of *Donohew*, or to rationalize its meaning as my brothers do in this case, we should not do so here.

Rules are made to be followed and not merely honored in the breach. Their purpose is to insure orderly and legal process and to enhance appellate review. Failure to insist on strict compliance is to invite that blizzard of affidavits this Court sought to avoid in *Care*.

I would reverse the decision of the Court of Military Review and direct that a rehearing may be ordered.