**UNITED STATES**

v.

**Robert J. SAWINSKI, 393 72 0761, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 82 4500.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 6 Aug. 1982.

Decided 20 May 1983.

LCDR David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

CDR W.J. Hughes, JAGC, USN, Appellate Government Counsel.

LT Steven P. Benson, JAGC, USNR, Appellate Government Counsel.

Before ABERNATHY, Senior Judge, and BARR and MALONE, JJ.

ABERNATHY, Senior Judge:

We had thought that, with the passage of over 13 years since its pronouncement, attempts to experiment with the procedural requirements of *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), had ceased. Unfortunately, we were wrong.

Assigned as error, we are now asked to review the sufficiency of a providence inquiry in which the only relation of the appellant to the facts alleged in the offenses was by way of a stipulation of fact, received in evidence as an appellate exhibit and as to which no questions concerning the substantive content of the stipulation were propounded to appellant. The Government, in its reply to appellant's assertion, concedes error and moves the Court to direct a proceeding in revision to correct the deficiencies in the providence inquiry. We accept the concession of error as properly made and reverse.

Appellant, tried by general court-martial consisting of military judge alone, pleaded guilty to four separate trilogies of drug offenses involving both marijuana and lysergic acid diethylamide (LSD) and occurring on 10, 12 and 19 March 1982 and 12 April 1982. After the statement of pleas, the military judge properly advised appellant that his pleas of guilty were equivalent to a conviction, that he could be found guilty on the basis of his pleas alone and without receipt of evidence, and that his pleas would not be accepted unless he realized that by his pleas he admitted every element of each offense. The military judge thereafter apprised appellant that by his pleas he waived his constitutional right against self-incrimination, his right to a trial of the facts by court-martial, and his right to be confronted by the witnesses against him. Appellant acknowledged his awareness of the implications of his pleas upon these rights.

The military judge then inquired as to the existence of a stipulation of fact. In response, the defense counsel offered a stipulation as Appellate Exhibit II. The military judge gave the following advice to appellant concerning the received stipulation: (1) that it constituted an agreement between counsel and appellant that the stated contents of the stipulation were true; (2) that if accepted into evidence the contents would become uncontradicted facts in the case; (3) that appellant could not be forced to enter into the stipulation; (4) that appellant should only enter into the stipulation if he truly wanted to do so and felt it was in his own best interest; (5) that the stipulation would be used "during this inquiry to help me determine the providency of your guilty plea;" (6) that trial counsel could use the stipulation as a matter in aggravation during the sentencing phase of trial; (7) that the military judge would consider the contents of the stipulation as setting forth aggravating matters; and, (8) that if the stipulation were contradicted after the plea of guilty was accepted, the providency into the plea would have to be reopened. Appellant acknowledged his understanding of each ramification of the

stipulation as explained, admitted to the truthfulness of its contents, and stated that he had read the stipulation, discussed it with his counsel and was entering into the stipulation voluntarily. The stipulation of fact was then received into evidence as an appellate exhibit, subject to acceptance of the pleas of guilty. We here observe that the stipulation contained a tailored recitation of all the elements of each offense alleged and a "factual confession" to each offense which set forth, with utmost particularity, virtually every fact which the Government would have been required to prove beyond reasonable doubt if trial had proceeded on the merits.[1]

With the stipulation in evidence, the military judge advised appellant of the elements of the offenses to which pleas of guilty had been entered, sufficiently tailoring each element to the averred acts in each specification so as to relate appellant personally to the offenses charged. Though the military judge indicated that appellant should be prepared to discuss the *facts* with him, the only substantive colloquy between judge and appellant which followed resulted in obtaining appellant's admission that he knew that a "prohibition of pretty high level, maybe even it was Navy regulations," made unlawful the possession, sale and transfer of controlled substances, to include marijuana and LSD; that what appellant was "doing" on 10, 12 and 19 March was wrongful;[2] that Article 1151, Navy Regulations, was "extra-territorial" in that it applied to military personnel off-base as well as on-base;[3] and, that appellant was a member of the naval service. There ensued neither discussion of the matters contained within the stipulation of fact nor questioning of appellant concerning the factual ba-

sis for his pleas. We here note that the only in-court verbal acknowledgment by appellant of facts relating to the offenses occurred in his unsworn statement offered during sentencing wherein he disclaimed any involvement in the sale of drugs beyond the transactions charged and also identified the purchasers involved in each specification.

The providence inquiry at an end, the military judge apprised appellant of the maximum permissible punishment based upon his pleas of guilty and thereafter purported to discuss the terms of the pretrial agreement. In doing so, however, he omitted any reference to five of the eight major paragraphs, which contained eight enumerated conditions or understandings to the agreement.

Prior to announcing his findings, the military judge did not specifically state that he found the pleas to have been entered voluntarily and with full knowledge by appellant of their meaning and effect or that the pleas were determined to be provident. The final irregularity in this trial proceeding was the failure of the military judge to enter findings whether the terms of the pretrial agreement were, or were not, in accordance with appellate case law, contrary to public policy, or contrary to the judge's notions of fundamental fairness. *See United States v. Williamson,* 4 M.J. 708 (N.C.M.R.1977); *United States v. Hoaglin,* 10 M.J. 769 (N.C.M.R.1981).

*United States v. Care, supra,* sets forth as procedural elements to a provident plea inquiry the requirement that the military judge "question the accused about what he did or did not do ... to make clear the basis for a determination by the military trial judge ... whether the acts or the

---

1. The "uniqueness" of *Care* is such that had appellant verbally recited in-court, and in response to questions posed by the military judge, each factual averment stipulated to, and thereafter admitted to its truth, we would find the requirements of *Care* to have been met with full compliance.

2. No reference was made by the military judge to the date 12 April 1982 which governed specifications 10 through 12.

3. Even in light of *United States v. Trottier,* 9 M.J. 337 (C.M.A.1980) and *United States v. Stookey,* 14 M.J. 975 (N.M.C.M.R.1982), determining court-martial jurisdiction on the basis of the "extra-territorial" application of Navy Regulations, rather than the standard of "service-connection," is fraught with danger, if not clearly wrong.

omissions of the accused constitute the offense or offenses to which he is pleading guilty. *United States v. Rinehart,* 8 U.S.C.M.A. 402, 24 C.M.R. 212 (1957); *United States v. Donohew,* 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969). This requirement will not be satisfied by questions such as whether the accused realizes that a guilty plea admits 'every element charged and every act or omission alleged and authorizes conviction of the offense without further proof.'" *Care, supra* at 541, 40 C.M.R. at 253. The charge of *Care* goes on to reflect that the military judge must shoulder the responsibility to "personally address" the accused not only to ascertain that a factual basis for the plea of guilty exists, but also to advise him that his plea waives the constitutional rights enumerated above.

We believe the case law which has emerged subsequent to, and in interpretation of, *Care* supports the proposition that "personally addressing" and "questioning" an accused requires *at least some minimal,* yet meaningful, dialogue and colloquy between a military judge and an accused. The reference to *Donohew* in the context of "questioning" the accused reinforces us in this conclusion. The law is settled that an exhibit, signed by an accused, which recites the entirety of the counsel rights under Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b), and as to which the accused acknowledges in court that he understands those rights as set forth in the exhibit, is not sufficient, absent an accused's "personal response to direct questions" from the military judge to meet compliance with *Donohew. United States v. Bowman,* 20 U.S.C.M.A. 119, 42 C.M.R. 311 (1970). It is furthermore clear beyond dispute that the underlying standards, in their application to the in-court dialogue between judge and accused, enunciated in both *Donohew* and *Care* are identical. *See United States v. Feely,* 19 U.S.C.M.A. 152, 41 C.M.R. 152 (1969); *United States v. Hook,* 20 U.S.C.M.A. 516, 43 C.M.R. 356 (1971). We further have no hesitation in concluding that the authors of *Care* would not accept an exhibit, signed by the accused, which enumerates the constitutional rights waived by a guilty plea as the equivalent of the requirement that "the record must also demonstrate the military trial judge ... personally addressed the accused," and tendered such advice. *See Care, supra* at 541, 40 C.M.R. at 253. This being so, it necessarily follows that an exhibit, in this case a stipulation of a fact, signed by the appellant, in which even the most complete of factual admissions of guilt are contained, *standing alone* and without any further inquiry by the military judge to relate an accused personally and factually with the stipulated matter or the offenses, is insufficient to meet the procedural requirement established by *Care* to "personally address" an accused to ascertain the factual basis for a plea of guilty.

We do not intimate that any departure from a technical reading of *Care,* or use of stipulations of fact as part of a providency inquiry, will result *ipso facto* in error. We are not unmindful of *United States v. Wimberly,* 20 U.S.C.M.A. 50, 42 C.M.R. 242 (1970), wherein it is held that "military judges may employ different techniques in complying with the second *Care* requirement ... that the military judge question the accused about his actions and intentions in order to determine whether his actions constitute the offenses to which he is pleading guilty." *Wimberly, supra* at 51, 42 C.M.R. at 243. Similarly, we recognize the legitimate use of a stipulation of fact as part of the providence colloquy *to supplement,* but not to serve in lieu of, the "personal questioning" from the military judge. *See Wimberly, supra; United States v. Lanzer,* 3 M.J. 60 (C.M.A.1977); *United States v. Davis,* 48 C.M.R. 892 (NCMR 1974); *United States v. Sweisford,* 49 C.M.R. 796 (A.C.M.R.1975), or its use where an accused, without personal recall of the events described by the allegations, has satisfied himself that the evidence in possession of the Government would be sufficient to prove his guilt. *United States v. Moglia,* 3 M.J. 216 (C.M.A.1977). In each instance, the stipulation of fact serves as a resource of reference *to buttress* an otherwise adequate and contemporaneous questioning of

an accused by the military judge that, at a minimum, should extract from the accused those verbal admissions of facts necessary to relate him personally to the offenses.

Relevant to what we conclude to be the proper use of, and limitation on, a stipulation of fact to supplement a providence inquiry is the following comment of the Court in *Wimberly:*

> Appellate defense counsel advance forceful arguments against the efficacy of Prosecution Exhibit 2 (the stipulation) to establish an adequate compliance with *Care, supra. If this were the only factual basis in the record, and if the military judge had not personally addressed the appellant to elicit his responses to certain questions, we might be inclined to agree.*

*Wimberly, supra* at 52, 42 C.M.R. at 244. (Emphasis added). This observation of the Court appears to be a challenge, not to the content of the matters admitted within the stipulation received in that case, but to the use of such stipulation to the exclusion of any meaningful discussion between the military judge and an accused regarding the facts to be admitted by a plea of guilty. We find the providence inquiry under review in this case does not meet even the "marginally" acceptable procedure followed in *Wimberly.* We would also note that a standard of performance higher than "marginal compliance" is required of military judges in carrying out the functions of their position.

We have also assessed the providence inquiry in its entirety in light of *United States v. Bertelson,* 3 M.J. 314 (C.M.A.1977). Though *Bertelson* deals with a "confessional stipulation" in a not guilty plea case rather than an admission, be it verbal or stipulated, during the providence inquiry into a guilty plea, the distinction is one of form, not of substance. The safeguards intended by the respective procedures are clearly retained. See *United States v. Bacon,* 47 C.M.R. 820 (N.C.M.R.1973). What *Bertelson* makes clear is that incident to

accepting a "confessional stipulation" into evidence the military judge must advise an accused that the stipulation is inadmissible in the absence of his consent, that the Government has the burden of proving his guilt beyond reasonable doubt, and that acceptance of the stipulation serves to relieve the Government of that burden, and must also ascertain from the accused *on the record* that a factual basis exists for the stipulation, utilizing a "similar, although not identical, inquiry" to that required by *Care.* It is thus clear that necessarily included within every *Bertelson*-type case is a *Care*-type inquiry utilizing the personal addressal method of questioning. If an inquiry cannot meet the threshold requirements of *Care,* it perforce cannot be saved by resort to *Bertelson.* What was attempted in this case, and now found deficient, is the acceptance of "de facto" guilty pleas without the safeguards of either *Care* or *Bertelson.* Such is not permitted.

Certainly the logic and sound legal analysis contained in Judge Barr's dissent is attractive. It merits the closest attention of higher authority. Nevertheless, we must conclude that the use of a stipulation of fact, to the exclusion, and in lieu, of any and all other inquiry into the factual basis for a plea of guilty, is insufficient to meet the procedural requirements established by *Care.*

We have referred to other irregularities in the trial process of this case[4] because they, when combined with the inadequate inquiry into the providence of the guilty pleas, reveal what we perceive to be a marked inclination on the part of this military judge to ignore the judicial responsibilities which have devolved upon him consequent to appellate decisional law. A trial judge is no more free than this Court to ignore the mandates of law established by a superior tribunal. This principle is nowhere better evidenced than in this case for we are convinced of appellant's guilt of the offenses and that his pleas were the product

4. See *United States v. Elmore,* 1 M.J. 262 (C.M.A.1976); *United States v. Green,* 1 M.J. 453 (C.M.A.1976); *United States v. King,* 3 M.J. 458 (C.M.A.1977); *United States v. Williamson, supra; United States v. Hoaglin, supra.*

of a voluntary and knowing act. The procedural requirements of *Care,* however, preclude us from affirming his conviction.

Accordingly, the findings of guilty and the sentence are set aside. Proceedings in revision may be directed.

Judge MALONE concurs.

BARR, Judge (dissenting):

I believe, and most uncomfortably so, that the majority correctly reads what has, at least with respect to practice in the naval service, evolved as the "preferred" application of the inquiry procedure enunciated in *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), and its issue. But I am convinced that the "preferred" procedure is not the "sole" procedure permissible under the theory which underlies *Care,* nor, in all cases, necessarily the best. The decision of the majority is symptomatic of a prevailing view, erected as a self-imposed bulwark to what I perceive to be sound legal reasoning, that inelasticity and ritualism are the hallmarks for the application of *Care.* I am unable to share in this position.

My review of the entire record of trial in this case reveals three facts which emerge with dramatic and self-evident clarity:

(1) Appellant is indeed guilty, and his guilt is established beyond any reasonable doubt, for the charged offenses. Furthermore, he entered his pleas voluntarily, and with full understanding of the nature of the charges and of the consequences which attended his pleas;

(2) A military judge, misguided in his belief that his courtroom was a judicial laboratory for conducting experimentation in the administration of military justice, chose the role of procedural innovator without appreciating the ramifications which attend *any* departure from the "strait-jacket" of procedure in which we have enveloped ourselves and which we so religiously embrace; and,

(3) The opinion of the majority is dictated, not by a belief that appellant is innocent of the charges, not by a conclusion that his pleas are involuntary in the constitutional sense, nor through a conviction that appellant lacked comprehension of the nature of the offenses or the meaning and effect of his pleas, or by a finding that *any* substantial right of appellant's was prejudiced as a direct result of the providency procedure described. Rather the majority concludes, and the Government, *without brief or analysis,* enters its concession that the pleas are improvident, and reversal mandated, by construing *Care* to require such a result where the inquiry is *procedurally improvident,* though concededly *legally provident* in relation to the stipulated facts.

It is indeed unfortunate that we must bear witness to a system that has seemingly so elevated the mechanics of a specific procedure, to the total disregard of the substance intended to be derived as a benefit of that procedure, that it concerns itself more with "the trial judge's failure to dot every 'i' and cross every 't'"[1] during the providence inquiry than with whether the accused understandingly and voluntarily entered pleas of guilty and is in fact guilty. The ultimate substance of the providence inquiry in this case, when viewed in its entirety, is factually and legally sufficient to prove that appellant's pleas were voluntary, that he truly understood the nature of the allegations against him, that is, the elements of the offenses as tailored to the factual averments of criminal conduct, and that he knowingly admitted his guilt in a manner sufficient to make clear the basis for a determination by the military judge that his acts constituted the offenses to which his pleas were entered. In spite of this convincing evidence of providently entered pleas of guilty, we now feel compelled to hold that the "form" in which the proceeding was conducted is infirm—a procedural improvidency affecting the plea—hence a decree of reversal will issue without even a scintilla of evidence that appellant has been prejudiced in any right, let alone a substantial one, save a departure from ritualism.

---

1. *See United States v. King,* 3 M.J. 458 (C.M.A. 1977), (Cook, J., dissenting).

The *procedural improvidence* of appellant's pleas flows directly from inelastically equating the judge's responsibility to "question" an accused "about what he did or did not do" with the ritualistic application of the question and answer mode for conducting inquiries which is common to criminal trials—the judge must ask the question and the accused must respond in kind with factual admissions of guilt. *How* the factual basis for the plea of guilty was obtained, in contrast to whether or not there truly exists a factual basis in the record which supports the verity of the admission of guilt, has become the primordial consideration.[2] Though the words of *Care* would facially appear to require such a result, a result which I believe is repugnant to a reasoned application of law, the conclusion arrived at is totally inconsistent with the historical, and stated, purpose that underlies the *Care* inquiry.

The harbingers of the trial procedure enunciated in *Care*,[3] and as to which the *Care* doctrine owes both its legal and procedural genesis, are three decisions of the United States Supreme Court: *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), interpreting Rule 11, Federal Rules of Criminal Procedure (FRCP), *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), decided on constitutional grounds as a matter of Due Process under the 14th Amendment, and *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), which gave prospective, not retroactive, application to *McCarthy.*

An understanding of the historical evolution of our present trial practice, and hence rationale for the majority opinion, is necessary in order to obtain, and in my opinion regain, the proper perspective from which to evaluate the true merit of the providence procedure evidenced by this case.

The Supreme Court in *McCarthy* concluded that Rule 11, FRCP,[4] placed upon a federal district court the affirmative responsibility, prior to accepting a tendered plea of guilty, to:

(1) *personally address* the accused and determine that the plea is made voluntarily;

(2) *personally address* the accused and determine that he understands the nature of the charge;

(3) *personally address* the accused and determine that he understands the consequences of a guilty plea; and,

(4) satisfy itself that a factual basis for the plea of guilty exists.

The Court, in its decision, merged these obligations into what might be called the "voluntary and knowing" test of the Rule, designed to satisfy its two-fold purpose to ensure that a plea of guilty is voluntary in the constitutional sense and to provide a record of the factors relevant to the voluntariness determination.

Voluntariness in the constitutional sense contemplates that the plea be the product of free-will, not of threats, coercion, force, false promises, and the like. Because a guilty plea results in a waiver of certain constitutional rights, constitutional overtones were recognized as being implicit within the remaining obligations. The waiver must meet the *Johnson v. Zerbst,*[5]

---

**2.** Footnote 1 to the majority opinion suggests the legitimacy of this conclusion, for inferred therein is the view that had the military judge asked appellant directly, "What did you do?" and had appellant read, in-court, on the record and in response to the question, the pertinent portion of the stipulation, then the pleas of guilty would have been legally and procedurally provident.

**3.** Now substantially embodied within Paragraph 70b, *Manual for Courts-Martial, 1969 (Rev.)* (MCM).

**4.** Rule 11 then in effect stated, in pertinent part: "The court . . . shall not accept such plea . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea . . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

**5.** 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

test of "an intentional relinquishment or abandonment of a known right or privilege." Thus, in this regard, to be a knowing and voluntary plea, an accused must understand that he waives the constitutional right against self-incrimination, the right to a trial of the facts by a court, and the right of confrontation, as well as the consequences of such a waiver. Furthermore, he must understand the elements of the offenses and how the elements relate to the facts averred in the indictment and to be admitted by him via his plea. Though the Court's decision was predicated on an interpretation of Rule 11, FRCP, and thus the Court disclaimed any intention of reaching the constitutional arguments advanced, the constitutional overtones implicit within the Rule became the *ratio decidendi* in *Boykin*.

Reconciling *Boykin* with *McCarthy,* to determine which of the obligations adverted to are mandated by the Constitution and which are required only by Rule 11, FRCP, is no easy task. In my opinion, for a guilty plea to be voluntary under the Constitutional rule of *Boykin,* all four obligations must be met in some form or another. I fully recognize that the Court of Military Appeals has concluded otherwise, by declaring, in *Care:*

> "(W)e think that a plea of guilty may meet required (constitutional) standards if on the basis of the whole record the showing is clear that the plea was truly voluntary, even if the trial judge has not personally addressed the accused and determined that the defendant possesses an understanding of the law in relation to the facts."

*Care, supra* at 593, 40 C.M.R. at 251.

As it affects the present case, it matters not which view is applied, for the plea inquiry in question clearly meets the constitutional test under either standard advanced.

The *Care* inquiry emerged thereafter and the Court of Military Appeals in *United States v. Burton,* 21 USCMA 112, 44 CMR 166 (1971), made clear the genesis of its creation:

> Our *Care* opinion represented our attempt to apply to military trials *the same*

*providency inquiry objectives* enunciated by the Supreme Court of the United States v (sic) (in) *McCarthy v. United States,* (citations omitted) and *Boykin v. Alabama,* (citations omitted) (emphasis added).

*Id.* at 115, 44 C.M.R. at 169.

With the basis and purpose of the *Care* inquiry so distinctly enunciated, then, if one is to adopt the conclusion of the Court of Military Appeals regarding the constitutional ramifications that emanate from *McCarthy* and *Boykin* when read together, it becomes clear that we must look only to Rule 11, FRCP, to determine whether or not an infirmity affecting providency exists in the present case. Our High Court adopted this analytical approach in *United States v. Palos,* 20 U.S.C.M.A. 104, 42 C.M.R. 296 (1970), where it stated:

> The Manual provision (Paragraph 70, MCM) is almost identical with that provided in Rule 11, Federal Rules of Criminal Procedure. We may, therefore, look to Federal civilian court decisions on Rule 11 for guidance.

*Id.* at 106, 42 C.M.R. at 298.

This, on balance, is altogether appropriate, for, in the absence of a controlling procedure within the MCM, we have long been directed to look to the rules of procedure applicable to criminal trials in federal district courts. *See* Article 36(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 836(a). As we had no such procedure, we may fairly surmise that the Court of Military Appeals intended to apply to courts-martial practice those standards governing acceptance of guilty pleas set forth in Rule 11, FRCP, and as applied in the federal system.

Rule 11 has undergone numerous amendments since it was interpreted in *McCarthy* and *Care.* As applicable to the elements incident to a providence inquiry, excepting those provisions relating to the plea bargain process in the federal system, the Rule provides:

Rule 11. Pleas

(c) *Advice to Defendant.* Before accepting a plea of guilty ... the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, ...; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if his plea of guilty ... is accepted by the court there will not be a further trial of any kind, so that by pleading guilty ... he waives the right to a trial; and

(5) ...[6]

(d) *Insuring That the Plea is Voluntary.* The court shall not accept a plea of guilty ... without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement ....

(e) ...

(f) *Determining Accuracy of Plea.* Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

What is self-evident from a reading of present Rule 11 is that it has incorporated, as a rule of procedure consequent to Congressional authority, those constitutional concerns, both enunciated directly or, as I have suggested, implicitly as constitutional overtones, which were expressed by the Supreme Court in *McCarthy* and *Boykin.* Thus if the procedure set forth in Rule 11 is followed by a federal trial judge, and thus arguably by a military trial judge, the plea inquiry conducted pursuant thereto will meet constitutional as well as statutory standards.

Assessing the present case in light of Rule 11, we find that compliance with subdivisions (c) and (d) of that Rule, as they relate to the advice and determinations required of a trial judge, is well-evidenced within the providence inquiry. This, of course, leaves only subdivision (f) of Rule 11, the interpretation of which, as it has been embodied within the *Care* doctrine, has resulted in the majority's decision to reverse.

The first point of necessary comprehension is that, whereas subdivisions (c) and (d) require the trial judge to "personally address" to the accused, in open court, each of the elements of a providence inquiry expressed within those subdivisions, and make the necessary determinations incident thereto, subdivision (f) does not require such a formalistic and personal approach. Subdivision (f) only requires that the judge make "such inquiry" necessary to satisfy the court of the factual basis for the plea. No inelastic methodology for conducting "such inquiry" is specified within the Rule.

To what do we look to ascertain if a stipulation of fact would be an appropriate mechanism for conducting "such inquiry?" I would suggest the Notes of the Advisory Committee on Criminal Rules, which express the "legislative" history of their evolution. It is important to understand that the Advisory Committee drafts a particular proposed rule, declares in its Notes its understanding of the projected reach and intended implementation of the Rule, and submits the Rule, via the Standing Committee on Rules of Practice and Procedure and,

---

**6.** Subdivision (5) requiring advice if an accused is placed under oath during the providence inquiry, is not applicable in the military. *United States v. Simpson,* 17 U.S.C.M.A. 44, 37 C.M.R. 308 (1967). *But see* Rule 910 to the proposed revised Manual for Courts-Martial.

thereafter, the Judicial Conference, to the Supreme Court of the United States. After consideration of the recommended Rule, and if it approves the substance of the procedure embodied therein, the Supreme Court transmits the proffered Rule to Congress for adoption. Once the rule is promulgated, it may be presumed that the Supreme Court has adopted not only the Rule but also the interpretation of the Rule expressed within the Notes of the Advisory Committee. For our purposes, we may thus conclude that the Supreme Court gave its approval of Rule 11(f) in full awareness, and acceptance, of what the Advisory Committee suggested as alternative bases for conducting the "factual basis" inquiry. The Notes of the Advisory Committee in this regard state:

> Subdivision (f) retains the requirement of old Rule 11 that the court should not enter judgment upon a plea of guilty without making such an inquiry as will satisfy it that there is a factual basis for the plea. The draft does not specify that any particular type of inquiry be made. *See Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, [498] 30 L.Ed.2d 427 (1971); "Fed.Rule Crim.Proc. 11, governing pleas in federal courts, now makes clear that the sentencing judge must develop, on the record, the factual basis for the pleas, as, *for example,* by having the accused describe the conduct that gave rise to the charge." An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, *or by whatever means is appropriate in a specific case.* This is the position of the ABA Standards Relating to Pleas of Guilty § 1.6 (Approved Draft, 1968)." (emphasis added).

If evidence that the Supreme Court of the United States would find, as satisfactory compliance with the purpose stated within rule 11(f), the variant methodologies suggested as examples by the Notes, we need only return to *McCarthy,* where, in footnotes 6 and 18, both referring specifically to the factual basis inquiry, the Supreme Court cites to the Notes of the Advisory

Committee as authority for the proposition advanced in the body of the opinion. Furthermore, the Supreme Court clearly stated that the nature of the providence inquiry must vary according to the case and thus declined to adopt a mechanistic dot the "i" and cross the "t" approach. *See McCarthy, supra,* fn. 20.

Several Federal Circuit Courts of Appeals have so interpreted Rule 11(f). In *United States v. King,* 604 F.2d 411 (5th Cir.1979) the Court held that to the extent the trial court did not personally address an accused concerning the factual basis of his plea, there was no violation of Rule 11(f) since, as long as a factual basis was developed on the record, it could come from several sources. *Accord Ruiz v. United States,* 494 F.2d 1 (5th Cir.1974) *cert. den.* 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144; *Davis v. United States,* 470 F.2d 1128 (3rd Cir.1972).

It is totally consonant with the purposes of Rule 11(f) to conclude that a stipulation of fact, which enumerates tailored elements and contains an unequivocal admission of *all* facts necessary to establish a nexus between an accused, the averred facts within the charge, and the facts to be admitted by the plea, as well as every fact which the Government would have been required to prove beyond a reasonable doubt had a plea of not guilty been entered, would legally qualify as a "means ... appropriate in a specific case." It could even be suggested that the Court of Military Appeals recognized as much in *United States v. Dunbar,* 20 U.S.C.M.A. 478, 43 C.M.R. 318 (1970), where it appears that a stipulation of fact was entered into evidence for purposes of the providence inquiry. As far as I can glean from the facts recited within the opinion of the Court, no further factual inquiry was conducted by the military judge. It is clear, however, that Dunbar made equivocal admissions of guilt and advanced justification for his conduct which rendered his pleas *factually,* not *procedurally* improvident. Though the decision articulated no opinion on the propriety of utilizing a stipulation of fact to conduct a providence inquiry, it is worthy of note that one

judge, finding no factual inconsistency between the stipulation and Dunbar's other statements on the record, found the pleas provident.

The position I take in this case is one, in part, of frustration, which arises whenever we clearly adopt a specific procedure and then, inexplicably, depart therefrom without reason. In the case of the *Care* inquiry, we have become so spell-bound by the words chosen by the Court of Military Appeals in declaring the principle enunciated therein that we have forgotten—perhaps ignored—the principle itself and the "why" of its adoption. We have become so engrossed in the litany that we have engrafted on some of our procedures that we test not for the substantive content of an inquiry but rather for the method employed in conducting the inquiry or whether our "magical-words" were incanted.[7]

I am no blind advocate for "federalizing" our military system. To the contrary, I believe we often go too far in trying to mirror the federal practice when the need for it does not exist or the federal procedure is at odds with our traditions or procedure.[8] If, however, as the Court of Military Appeals has clearly stated, and as would be appropriate in light of Article 36, UCMJ, Rule 11 is to be our historical guide in assessing a providence inquiry, it should also, to the extent that it is not inconsistent with the UCMJ or MCM,[9] be our practical guide.[10] Our system of military justice suffers credibility when we incorporate a federal rule as a military procedure and then, without sound reason,[11] interpret its purpose and meaning in a manner which distorts its intendment.

I would find the procedure followed in this case to be acceptable under Rule 11, FRCP, and as adopted in *Care*, would find the pleas to be provident, and would affirm the conviction. We need only ask whether there exists within the record clear evidence of a factual basis for a plea of guilty. If so, it should matter not from what source it comes—personal questioning or a stipulation of fact signed and adopted by an accused as his admission. The nature of the source does not in any degree tend to the elucidation of the subject of inquiry—the existence of a factual basis for a guilty plea.

Even were I to conclude that the inquiry was procedurally infirm under *Care*, I would nevertheless affirm the conviction because a clear factual basis exists for the pleas, they were voluntarily and knowingly

7. No better example exists of this preoccupation with litany than is reflected in *United States v. Williamson*, 4 M.J. 708 (N.C.M.R. 1977) and *United States v. Hoaglin*, 10 M.J. 769 (N.C.M.R.1981), which require a military judge to state, on the record, that he finds the provisions of a pretrial agreement to be in accordance with appellate case law, not against public policy, and not contrary to his own notions of fundamental fairness. Such a statement adds nothing to the inquiry. If the military judge accepts the pretrial agreement, can we not presume that he has implicitly found these ingredients to exist? If a provision is contrary to law or policy, the fact that a judge declared the opposite would not bind us to acceptance of his declaration. The bottom line: "Saying it don't make it so!"

8. The tendency of some military judges to call court members "jurors" and advise an accused of his right to trial "by jury" is an example. I would suggest that such attempt at parallelism is dangerous, for in the federal system the term "jury" is, by definition, composed of 12 persons. *See* Rule 23(b), FREP; *Williams v. Flori-*

da, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

9. For example, we do not permit a plea of *nolo contendere*, or place an accused under oath during providency, and our pretrial agreement procedures vary from the federal norm due to the "judicial" role which the convening authority plays in the military system.

10. It is noted that the proposed revision to the MCM, in Rule 910, adopts almost verbatim Rule 11, FRCP, including the "such inquiry" approach to developing the factual basis for the plea.

11. The policy of paternalism and solicitude that followed in the aftermath of World War II is, in my opinion, outmoded. Our military lawyers are specialists in their field and, in general, provide better representation in the criminal field than the general body of civilian attorneys. Our appellate system is far superior to any now existing in any state or the federal system. One day we will recognize our own legitimacy and quit apologizing for it.

entered, and appellant has suffered absolutely no prejudice. The principle stated in *United States v. Whitmire,* 21 U.S.C.M.A. 268, 45 C.M.R. 42 (1972), is sound:

Adherence to established procedure is certainly a good practice. But, a departure from the ritual of established procedure is not necessarily bad practice; it may simply be another way of serving the same purpose and achieving the same goal as the prescribed procedure. (Citations omitted). However, even bad practice does not justify reversal of an otherwise valid conviction if no harm results to the accused."

*Id.* at 269, 45 C.M.R. at 43.

We should not refrain from applying this principle to this case.

LCDR Georgia L. Winstead, JAGC, USNR, Appellate Defense Counsel.

LT Stephen R. Cochell, JAGC, USNR, Appellate Defense Counsel.

LCDR R. Clayton Seaman, Jr., JAGC, USN, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BYRNE and GARVIN, JJ.