*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Petitioner*

**v.**

**Nicholas T. RAINES**
Lance Corporal (E-3), U.S. Marine Corps
*Accused / Real Party in Interest*

_____

**Nicholas S. Henry**
Lieutenant Colonel (O-5), U.S. Marine Corps
*Respondent*

_____

**No. 202200081**

_____

Decided: 11 May 2022

Review of Petition for Extraordinary Relief in the Nature
of a Writ of Mandamus

Military Judge:
Nicholas S. Henry

Arraignment 25 October 2021 before a general court-martial convened
at Marine Corps Base Camp Lejeune, North Carolina.

For Petitioner:
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Major Kerry Friedewald, USMC*

For Real Party in Interest:
*Lieutenant Aiden Stark, JAGC, USN*

Senior Judge STEPHENS delivered the opinion of the Court, in which Chief Judge MONAHAN and Judge DEERWESTER joined.

_____

**PUBLISHED OPINION OF THE COURT**

_____

STEPHENS, Senior Judge:

Chief Justice Roberts once said, "Judges are like umpires. Umpires don't make the rules, they apply them. The role of an umpire and a judge is critical. They make sure everybody plays by the rules, but it is a limited role. Nobody ever went to a ball game to see the umpire."[1] With that in mind, we consider whether a military judge may strike a term in a negotiated plea agreement and then rewrite the agreement to his own liking over the objection of one or both of the parties. The President does not have a line-item veto and neither does a military trial judge. We answer in the negative.

## I. BACKGROUND

### A. United States v. Alkazahg

In September 2021, this Court published an opinion in *United States v. Alkazahg*.[2] That case was a guilty plea involving a Marine who had made some vague threatening statements toward his command as he was departing Hawaii to go on leave in Nebraska. While on leave he was placed on a list shared by the Department of Defense with various law enforcement agencies showing he was absent without leave and dangerous. When he attempted entry onto a

---

[1] *Confirmation Hearing on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States: Hearing before the Committee of the Judiciary*, 109 Cong. 55 (2005) (Statement of John. G. Roberts, Jr.).

[2] *United States v. Alkazahg*, 81 M.J. 764 (N-M. Ct. Crim. App. 2021).

2

nearby Air Force base, he was detained and his vehicle was searched where firearms and ammunition were discovered.

He eventually pleaded guilty to various charges and specifications and did so under the new sentencing structure pursuant to the Military Justice Act of 2016 [MJA 16]. One feature of MJA 16 is "segmented" sentencing rather than "unitary" sentencing. In segmented sentencing by a military judge, a service-member will be sentenced to confinement or fines for each individual specification, rather than the military judge announcing a unitary sentence for the entirety of the specifications. One of the other features of MJA 16 is that the parties can negotiate for minimum and maximum punishments, and those punishments can be the same in the plea agreement.

In *Alkazahg*, we took issue with three of the plea agreement's terms. The appellant's confinement for the various specifications was to be served concurrently, with the largest confinement time set at 36 months. He was to be confined for 24 months for violating Article 107, UCMJ, when he told his gunnery sergeant what could be described as a "white lie." He was to be confined for 24 months for an additional specification of violating Article 107 for a transitory lie the appellant told to a law enforcement officer as he was about to search his vehicle. The appellant was also to be confined for 24 months for a fraudulent enlistment (the facts of which we will not review here). We affirmed the confinement for each of those specifications for only 30 days, 12 months, and 30 days, respectively. In conducting our sentence appropriateness analysis, we noted:

> We remind military judges, counsel, staff judge advocates, and convening authorities, that despite the changes from MJA 16, military judges are still empowered to decline to accept terms contained in plea agreements that violate public policy, appellate case law, or fail to adhere to basic notions of fundamental fairness. *See United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011); *United States v. Hall*, 26 M.J. 739, 743 (N-M. Ct. Mil. Rev. 1988).[3]

**B. The Military Judge Rejected a Term in the Plea Agreement**

The Real Party in Interest, Lance Corporal (E-3) [LCpl] Raines, was under investigation for various sexual misconduct stemming from his requests to a woman to masturbate her two-year-old son and send him a recording of the

---

[3] *Id.* at 787 n.129.

act. Lance Corporal Raines also possessed a video where he engaged in sexually explicit conduct with a minor. He was charged with:

Soliciting a woman to produce child pornography in violation of Article 82, UCMJ [Charge I, Specification 1];

Soliciting the same woman to distribute the video [Charge I, Specification 2];

Soliciting the woman to masturbate her two-year-old son [Charge I, Specification 3];

Possessing child pornography in violation of Article 134, UCMJ [Charge II, Specification 1];

Producing child pornography [Charge II: Specification 2]; and

Distributing child pornography to himself [Charge II: Specification 3].

Each specification under Charge I allowed for a maximum punishment of total forfeitures, 10 years' confinement, and a dishonorable discharge, as did Specification 1 of Charge II. Specifications 2 and 3 of Charge II, were the same, but allowed for 30 and 20 years' confinement, respectively.

Lance Corporal Raines, with the assistance of his trial defense counsel, entered into plea agreement negotiations with the convening authority. Lance Corporal Raines offered to plead guilty to soliciting the woman to masturbate her two-year-old son if the convening authority would drop the remaining charges. For sentencing, LCpl Raines offered to be sentenced to reduction to E-1 and to receive forfeitures. He offered to not have any fines imposed on him. For a confinement range, he offered a minimum of two months and a maximum of four months. Finally, in his offer, he agreed the military "shall" adjudge him a bad-conduct discharge.

The convening authority countered the offer of the two-to-four month range for confinement with his own offer of six-to-eight months. Lance Corporal Raines accepted. About a week later, the trial counsel notified the trial judiciary at Camp Lejeune that LCpl Raines and the convening authority had a plea agreement. He sent it and the stipulation of fact to the judiciary as part of a joint motion for docketing. About a month later, the parties appeared before the Respondent for a guilty plea.

But the military judge did not accept the plea agreement as the parties had written it. Rather than reject the entire plea agreement—or inform the parties that he was rejecting the plea agreement because of a particular term or terms—he struck a single provision and believed he could continue with the

guilty plea with his amendment to their plea agreement. Specifically, the military judge struck the term "A Bad Conduct Discharge shall be adjudged."

Both the Government and LCpl Raines objected. The Government eventually filed a bench brief with the military judge arguing that he did not have any authority to rewrite a term that he found objectionable in the plea agreement. The military judge informed LCpl Raines that he intended to rewrite the term and proceed with the plea agreement, and that LCpl Raines would have the opportunity to argue that he should not receive a punitive discharge and the Government would be free to argue that he could receive a dishonorable discharge.

**C. The Government Sought a Writ of Mandamus**

The Government and LCpl Raines both wanted to move forward with the guilty plea according to the terms they negotiated in their plea agreement. To that end, the Government filed a Petition for a Writ of Mandamus with this Court. In addition to the charge sheet, plea agreement, and stipulation of fact, the Petition included the Government's bench brief to the military judge and the relevant transcripts. The Petition also included declarations from LCpl Raines and the Senior Trial Counsel [STC] at Camp Lejeune. Lance Corporal Raines stated that he intended to be bound by the terms of his plea agreement. The STC's declaration recounted several other cases at Camp Lejeune where the military judges expressed similar views concerning their authority to strike terms in plea agreements.

Here, the Government filed a Petition with this Court seeking a stay of the proceedings below and a writ of mandamus to vacate the military judge's ruling that he had authority to strike the term requiring him to award a bad-conduct discharge. We granted the Government's request for a stay. The Real Party in Interest, LCpl Raines, elected not to file a responsive pleading. The Respondent relied on his written ruling contained in the record.[4]

## II. DISCUSSION

As a preliminary matter, we are satisfied we have jurisdiction to consider this writ and to issue it under the All Writs Act.[5] Such a writ is in aid of this

---

[4] Petitioner's Motion to Attach, Apr. 29, 2022 (containing Military Judge's Supp. Ruling, Apr. 27, 2022).

[5] 28 U.S.C. § 1651 (2018).

Court's jurisdiction and is also necessary under the circumstances. Under Article 66, UCMJ, this Court has jurisdiction over all cases where the punishment includes a punitive discharge. Given that this is the precise issue impelling the writ, this clearly falls within this Court's potential jurisdiction.[6] Further, the issuance of the writ is necessary because the Government, and indeed LCpl Raines, too, is left without any realistic and timely method to attain relief. We now turn to whether the Government is entitled to a "clear and indisputable" right to the issuance of the writ and whether it is appropriate under the circumstances.[7]

First, our statement in *Alkazahg* was not a judicial grant of plenary authority for military judges to exercise a line-item veto over specific terms in plea agreements. Even if we thought that was a good idea, we have no authority to grant such power to the trial judiciary. We were simply reminding the trial judiciary that despite the bevy of changes from MJA 16, they still had the inherent gatekeeping authority—and duty—to reject plea agreements that "violate public policy, appellate case law, or fail to adhere to basic notions of fundamental fairness."[8] We used the phrase "terms contained in plea agreements" because we were referencing the "terms" of the segmented sentencing that appeared to bind the military judge in that case.[9] This is in line with the Court of Appeals for the Armed Forces' [CAAF] statement in *United States v. Soto*: "Relatedly, it is the military judge's 'responsibility to police *the terms* of the pretrial agreements to insure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness.'"[10] This considers the practical effect of letting the parties know what terms were causing the *entire* plea agreement to be rejected. The parties should not have to guess as to what term, or terms, caused the plea agreement to be rejected when they go back to the negotiating table.

Under Article 53a(b), UCMJ, Rule for Court-Martial [R.C.M.] 705(c)(1)(B), R.C.M. 910(f), and relevant case law, military judges do have authority to reject a term, or terms, in a plea agreement. But that authority does not include

---

[6] *United States v. Brown*, 81 M.J. 1 (C.A.A.F. 2021).

[7] *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citation omitted).

[8] *Alkazahg*, 81 M.J. at 787 n.129.

[9] *Id.*

[10] *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (quoting *United States v. Partin*, 7 M.J. 409, 412 (C.M.A. 1979)) (emphasis added).

excising out a single term or terms, or otherwise rewriting the agreement as they see fit, and then proceeding with the new plea agreement over the objection of the parties. Rather, our dicta in *Alkazahg* must be read in conjunction with the UCMJ, the Rules for Courts-Martial, and relevant case law. Article 53a(b)(5), UCMJ, requires that a military judge "shall reject a plea *agreement,*" when one or more of its terms make it "contrary to, or inconsistent with, a regulation prescribed by the President with respect to terms, conditions, or other aspects of plea agreements."

In *United States v. Green,*[11] the Court of Military Appeals explained that "[w]here the plea bargain encompasses conditions which the trial judge believes violate either appellate case law, public policy, or the trial judge's own notions of fundamental fairness, he should, on his own motion, strike such provisions from the agreement *with the consent of the parties.*"[12] Thus, absent the parties' consent to such judicial modifications, a military judge may only choose to reject the *entire* agreement based on the objectionable term or terms included within the agreement. [13] Article 53a(b)(1), UCMJ, states that a military judge "*shall* reject a plea agreement" that contains a provision that has not been accepted by both parties. It is obvious that neither the Government nor LCpl Raines is willing to accept the new judicially imposed term in this plea agreement concerning whether to award a punitive discharge and what kind of discharge it might be. This takes us to R.C.M. 705(c)(1)(A) and (B). A military judge must reject a "term or condition in a plea agreement" if "the accused did not freely and voluntarily agree to it."[14] A military judge must also reject a "term or condition" in a plea agreement plea that deprives an accused of, among other things, his "right to due process."[15] Lance Corporal Raines did not freely and voluntarily agree to the judicially amended provision in the plea agreement.

Under R.C.M. 910(f), a military judge may not accept a plea agreement if it violates R.C.M. 705, or if either party does not understand or agree to the plea agreement's terms. R.C.M. 910(f) also states that if the military judge rejects a *plea agreement*, he shall issue a statement explaining the basis for the

---

[11] *United States v. Green*, 1 M.J. 453 (C.M.A. 1976).

[12] *Green¸* 1 M.J. at 456 (emphasis added).

[13] Article 53a(b)(5), UCMJ (emphasis added).

[14] R.C.M. 705(c)(1)(A).

[15] R.C.M. 705(c)(1)(B).

rejection—where we assume the military judge would state what term or terms are objectionable and explain why—and allow the accused to withdraw his plea. The military judge then would inform the accused that the full range of lawful punishments could apply. Here, *neither* party agrees to the military judge's re-write of the plea agreement's terms. Therefore, under the Rule, the military judge must reject the new plea agreement he wrote because the parties themselves do not agree with it and because he has no authority under any rule, statute, or case law to exercise a line-item veto.[16] Just as the umpire is not a ballplayer, a military judge is not a party to a plea agreement. But like the umpire, he ensures a plea agreement is conducted according to the rules.

The military judge's justifications derive from our dicta in *Alkazahg* and a due process argument that a military judge is not required to merely be an "arm of the command" in sentencing.[17] As we have already explained, the dicta in *Alkazahg* is merely a reminder that, despite the changes in MJA 16, military judges are not just passive observers during a guilty plea. But they may only act within the boundaries of the UCMJ and the Rules for Courts-Martial.

Military judges are not required to be mere functionaries of a convening authority. While it is true that MJA 16 may reduce the discretionary decision-making a military judge can have in sentencing, the military judge's judicial gatekeeping functions are still central to the process of pleading guilty. However, we do not discern in any way that the congressional removal of executive power from convening authorities over the last decade vested military judges with the executive authority to re-write plea agreements and force one or both of the parties to accept the new agreement.

In *Ortiz v. United States*,[18] the Supreme Court definitively answered the question as to whether it possessed jurisdiction over CAAF cases. In answering in the affirmative, the Supreme Court noted the "military justice system's essential character" is "judicial."[19] Whatever limitations MJA 16 may have for

---

[16] While a military judge can tell the parties what term or terms is causing the *entire* plea agreement to be rejected, the military judge cannot become a party to the negotiations by suggesting *how* to alter the plea agreement. Supervisory counsel and staff judge advocates are more than qualified to assist the parties, but the military judge may not.

[17] Military Judge's Supp. Ruling at 5.

[18] *Ortiz v. United States*, ___ U.S. ___, 138 S. Ct. 2165 (2018).

[19] *Id*. at 2174.

military judges, the entire court-martial system is still judicial in nature and is a far cry from (as described in *Ortiz*) General Ambrose Burnside's special commission to try persons within the Military Department of Ohio who were aiding the Confederacy—which was not judicial in nature and therefore not subject to the Supreme Court's appellate jurisdiction. *Ortiz* stated that "courts-martial have operated as instruments of military justice, not mere military command."[20] And that is still true, despite the changes from MJA 16. But nothing in *Ortiz* countenances authority for a military judge to re-draft plea agreements over the objections of one or both of the parties.

It is commendable (and required) that military judges give such serious consideration to each and every term in a plea agreement especially concerning notions of fundamental fairness—which "refers to the particular interests of an accused"—and public policy—which "generally refers to societal interests above and beyond those of an individual accused."[21] Unless both of the parties agree to some new terms *of their choosing* that render the plea agreement acceptable to the military judge, then one or both of the parties could petition this Court to order the military judge to accept the plea agreement. If we accepted the petition, we would then consider whether the military judge abused his discretion. But we imagine that rejections of plea agreements by military judges will continue to be extremely rare.[22]

---

[20] *Id.* at 2175.

[21] *United States v. Hall*, 26 M.J. 739, 743 (N-M.C.M.R. 1988). We also note that solicitation under Article 82, UCMJ, does not have the same mandatory or maximum punishments as the completed act of sexual assault of a child under Article 120b, UCMJ. However, even for the completed offense here, though Article 56(b)(2)(D) would otherwise mandate a dishonorable discharge, under Article 53a(c)(1), a plea agreement may include a term that nevertheless provides for a bad conduct discharge. It would follow that society's interest would not be grossly offended if an accused was allowed to plead down to a bad conduct discharge for merely soliciting an offense when the UCMJ specifically allows such a plea for the completion of that offense. *See* Article 53a(c)(1), UCMJ.

[22] The Military Justice Review Group [MJRG] drafted a Legislative Report for Article 53a, UCMJ. We note the MJRG recommended that a military judge have authority to reject a plea agreement if the sentence agreement is "plainly unreasonable" and such a decision would be reviewed for an "abuse of discretion." *See* United States Department of Defense Military Justice Review Group, *Report of the Military Justice Review Group Part I: UCMJ Recommendations*, 33–34 (2015). While "[i]t is the statute, and not the legislative history, which has meaning and the force of law," we simply note the MJRG's conclusions match our own. *In re Gilpin*, 81 M.J. 702, 708 n.31 (N-M. Ct. Crim. App. 2021).

### III. CONCLUSION

After careful consideration, the petition for extraordinary relief in the nature of a Writ of Mandamus is **GRANTED**. We **VACATE** the military judge's ruling in which he struck the term "A Bad Conduct Discharge shall be adjudged" from the plea agreement and remand this case to the convening authority for action consistent with this Opinion.

Chief Judge MONAHAN and Judge DEERWESTER concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court